(No. 39951.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JESSIE EARL DAVIS, Appellant.

*Opinion filed March 28, 1968.*

JACK WAALER, Public Defender, of Urbana, for appellant.

JOHN J. BRESEE, State's Attorney, of Urbana, for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

We allowed leave to appeal from the denial of postconviction relief sought by the defendant, Jessie Earl Davis, who alleged that he was tried *in absentia* in violation of his constitutional right to be present at every stage of the criminal proceeding against him. Ill. Const., art. II, sec. 9; U.S. Const. Amend. VI and XIV.

Petitioner's forgery trial was originally scheduled for Monday, March 28, 1960, but was not actually reached until March 30 because a prior case was tried on March 28 and 29. The record includes a copy of a letter addressed to petitioner, who was free on bond, notifying him that his trial was set for the morning of March 28, and the postconviction testimony of the trial judge, the court reporter, and the prosecuting attorney placed Davis in the Champaign County courthouse on Monday, March 28, and Tuesday, March 29. While petitioner denied receiving any written notice of the trial date and denied being present at the State's Attorney's office or courthouse on the dates mentioned, the assistant State's Attorney (now an associate circuit judge) who conducted the prosecution of petitioner's case testified that Davis came to the State's Attorney's office

on the morning of March 28 and the witness told him to return on March 29; that on March 29 he met Davis outside the courtroom and informed him that his case would definitely be reached on Wednesday morning, March 30. The prosecuting attorney further testified that on the afternoon of March 29, he received a telephone call from a person, identifying himself as Davis, who inquired about his case and whom he once more told to be in court the next day at 9:30 A.M.

On the morning of March 30 a jury was impaneled in the absence of the petitioner who had failed to appear, and, since neither the petitioner nor any attorney appeared in his behalf, only the State presented evidence. The transcript of the March 30 proceedings shows that the petitioner did appear in court at 3:00 P.M. after the jury verdict had been rendered and judgment entered on the verdict. Davis was then told that he had been found guilty of forgery and was permitted to make an oral motion for a new trial. The trial judge allowed the petitioner ten days to place the motion in writing and advised him to retain counsel to represent him in post-trial matters if he wished. While the docket sheets in the office of the circuit clerk show that the law firm of Greaves and Harper represented Davis when his motion for a new trial was heard, both of these attorneys denied any recollection of being appointed to represent the petitioner or appearing on his behalf. On May 11 the post-trial motion was denied and sentence imposed.

On December 10, 1963, Davis filed a petition for post-conviction review and the public defender was appointed to represent him, but the cause was not heard until November 29, 1965. By that time Davis was no longer imprisoned in the penitentiary. It appears, however, that the delay between the filing of the petition and the hearing was not occasioned by his fault. The substance of the testimony at this hearing regarding the events surrounding the petition-

er's forgery trial has already been set forth. The evidence offered by Davis concerning his whereabouts on the morning of Wednesday, March 30, was his own testimony that he was at the Carle Clinic in Champaign where he had apparently been receiving treatment for a back injury although the March 30 visit was in connection with a urological problem. This was corroborated by a doctor on the hospital staff who testified that he examined Davis that morning for 15 to 20 minutes, adding that the petitioner was ambulatory and entered the hospital on his own power.

In addition to this testimony, petitioner denied he was ever present in the Champaign County courthouse in connection with this case prior to the day upon which he was sentenced, and testified he had never received a copy of an indictment, list of witnesses, nor had he ever been arraigned; he stated he did not know the charge against him until he received copies of the indictment and mittimus from the records office at the penitentiary after he had been imprisoned there, although the record indicates he was personally present at his January 21 arraignment and was there given a copy of the indictment and list of witnesses. He further denied that he was ever represented in this case by any lawyer despite the fact that a motion to quash the indictment was filed on his behalf by the law firm of Tanner and Patterson, argued and denied, and this firm subsequently sought and was granted leave to withdraw at a time when it is indicated petitioner was personally present and consented thereto. There is, however, nothing in the record before us indicating that petitioner was thereafter represented by counsel prior to the docket sheet notation of the appointment of Greaves and Harper to represent petitioner on the post-trial motion.

From the outset of the post-conviction hearing the State has asserted that the petition should be dismissed because Davis was not incarcerated at the time the cause was heard. The State relies on the wording of the Post-

Conviction Hearing Act which gives "any person imprisoned in the penitentiary" the right to allege a substantial denial of constitutional rights (Ill. Rev. Stat. 1965, chap. 38, par. 122—1) and this court's comment that the legislative intent behind this provision was "to make the remedy available only to persons actually being deprived of their liberty and not to persons who had served their sentences and who might wish to purge their records of past convictions." (*People* v. *Dale,* 406 Ill. 238, 246.) In some jurisdictions post-conviction remedies may be utilized to attack unconstitutional convictions regardless of the fact that the petitioner. has fully served his sentence. (*State* v. *Romero,* 76 N.M. 449, 415 P.2d 837; *Commonwealth* v. *Russell,* 209 Pa. Super, 467, 228 A.2d 208, 211.) Others restrict use of this remedy, usually because of statutory language, to those persons actually imprisoned at the time of hearing. (*Good* v. *State,* 240 Md. 1, 212 A.2d 487, 494; *State* v. *Richardson,* 194 Kan. 471, 399 P.2d 799, 801; *Smith* v. *State,* (Fla. App.) 175 So.2d 243; *Hackett* v. *People,* 158 Col. 304, 406 P.2d 331, 332.) As there are obvious advantages in purging oneself of the stigma and disabilities which attend a criminal conviction, we see no reason to so narrowly construe this remedial statute as to preclude the remedy in every case in which the petition is not filed and the hearing completed before imprisonment ends.

We turn then to a consideration of the merits of the petition and the supporting proof. While we note that the judge presiding in the post-conviction proceedings conscientiously conducted an extensive hearing and gave petitioner's counsel considerable latitude in his proof, we believe denial of the petition was not warranted.

There is, of course, no question as to the defendant's absolute right to be present at his trial, and this right can be waived only by the defendant himself. (*Snyder* v. *Massachusetts,* 291 U.S. 97, 105-6, 78 L. Ed. 674, 54 S. Ct.

330, 332; *People* v. *Steenbergen,* 31 Ill.2d 615, 618; *People* v. *Smith,* 6 Ill.2d 414, 416.) But a defendant may not prevent his trial by voluntarily absenting himself therefrom, and a defendant in a criminal case, particularly one who has been released on bail pending trial, has a duty to present himself when his case is reached on a jury trial calendar. (*Steenbergen;* see, also, *People* v. *De Simone,* 9 Ill.2d 522, 533.) In those cases where a defendant voluntarily absents himself from the courtroom after the trial has commenced it is uniformly held to be a waiver of the right to be present, leaving the court free to proceed with the trial in like manner and with like effect as if he were present. (*Diaz* v. *United States,* 223 U.S. 442, 455, 56 L. Ed. 500, 32 S. Ct. 250, 254; *People* v. *La Barbera,* 274 N.Y. 339, 8 N.E.2d 884, 885; *Commonwealth* v. *Diehl,* 378 Pa. 214, 107 A.2d 543; *State* v. *McCrary,* 365 Mo. 799, 287 S.W.2d 785, 790; *Trombley* v. *Langlois,* 91 R.I. 328, 163 A.2d 25, 28-9; *Mulvey* v. *State,* (Fla.) 41 So.2d 156, 157-8; *Reed* v. *State,* 172 Tex. Crim. 122, 353 S.W.2d 850, 851; *State ex rel. Shetsky* v. *Utecht,* 228 Minn. 44, 36 N.W.2d 126, 129-30; *People* v. *Teitelbaum,* 163 Cal. App. 2d 184, 329 P.2d 157, 173.) We have not, however, been referred to, nor has our research revealed, a single case in which a reviewing court has sustained the felony conviction of a defendant whose entire trial occurred in his absence. While the State cites *Steenbergen* for this proposition, it is clear that there are substantial differences between that case and this: there defendant was personally present in court when his trial commenced; it was a bench trial; the court itself announced the date, three days later, when the trial would resume; and defendant was represented by counsel. None of those factors is present here.

"Since the Magna Carta, the law has shown a steadfast predisposition favoring the opportunity to be heard. Justification for this view is the theory that 'the history of liberty has largely been the history [of observance] of procedural

safeguards.' (*McNabb* v. *United States*, 318 U.S. 332, 347, 87 L. Ed. 819, 63 S. Ct. 608, 616.)" (1966 U. Ill. L. F. 475, 478.) "For generations our law has shown an anxious concern lest any semblance of trial *in absentia* be sanctioned. [Citations.] * * * And we should not be quick to hold that delinquencies of the defendant will work a forfeiture of a right that has been so carefully safeguarded." *People* v. *Evans*, 21 Ill.2d 403, 405-6.

While we agree with the trial judge that the truth of much of this petitioner's testimony on the post-conviction hearing was open to serious question, it does not appear that he was represented by counsel at the time of his trial, and with the possibilities of bond forfeiture, criminal prosecution for forfeiting bail (Ill. Rev. Stat. 1965, chap. 38, par. 32—10) and contempt proceedings now available to prosecutors and judges for use in cases involving felony defendants who fail to appear for trial, it is seldom, if ever, that a court is justified in conducting an entire trial in the absence of the defendant. We therefore hold the felony trial of defendant, at no part of which he was present or represented by counsel, was constitutionally impermissible. See *Gideon* v. *Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.

The judgment of the Champaign County circuit court is reversed, and the cause remanded with directions to proceed in accordance with this opinion.

*Reversed and remanded, with directions.*