(No. 46588
(No. 46935

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ALLEN J. MEYEROWITZ, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DORIE WEINTRAUB *et al.,* Appellees.

*Opinion filed June 2, 1975.—Rehearing denied September 24, 1975.*

UNDERWOOD, C.J., and RYAN, J., dissenting.

James J. Doherty, Public Defender, of Chicago (John M. Kalnins, Assistant Public Defender, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon and John F. Brennan, Assistant State's Attorneys, of counsel), for the People.

No. 46933.—Appeal from the Appellate Court for the

Fifth District; heard in that court on appeals from the Circuit Court of Jackson County; the Honorable Judges Edward C. Eberspacher, Peyton H. Kunce, Robert W. Schwartz, and Everett Prosser, presiding.

William J. Scott, Attorney General, of Springfield, and Howard L. Hood, State's Attorney, of Murphysboro (James B. Zagel, Jayne A. Carr, and Thomas Connors, Assistant Attorneys General, of Chicago, of counsel), for the People.

Richard E. Cunningham, State Appellate Defender, of Springfield, and Hendricks & Watt, David W. Watt, Jr., Earl S. Hendricks, Jr., and Arnold M. Jochums, all of Murphysboro, for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In cause No. 46933, defendants, Dorie Weintraub, Yolande Tullar, Terry G. Nelms, Robert Genet, Rima Riszkiewicz, Christopher S. Korch, Herbert Kent and Terry J. Munk, appealed to the appellate court from judgments entered by the circuit court of Jackson County. The appellate court consolidated the cases for opinion, reversed the judgments (*People v. Weintraub*, 20 Ill. App. 3d 1090), and we allowed the People's petition for leave to appeal. In cause No. 46588, defendant, Allen J. Meyerowitz, appealed from the judgment of the circuit court of Cook County. The appellate court affirmed (*People v. Meyerowitz*, 17 Ill. App. 3d 345), and we allowed defendant's petition for leave to appeal. Although separately briefed and argued, the cases have been ordered consolidated for opinion.

Between the dates of August 20, 1970, and October 4, 1971, in the circuit court of Jackson County, the defendants Tullar, Nelms, Genet, Riszkiewicz, Korch, Kent and Munk, represented by retained counsel, and defendant

Weintraub, represented by the public defender, entered negotiated pleas of guilty to the charge of illegal possession of marijuana in violation of section 38 of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22–40). The circuit court imposed the following sentences: Weintraub — 2 years' probation and a $500 fine plus costs, payable at the rate of $25 per month; Tullar and Nelms — 5 years' probation and a $1,000 fine plus costs, payable $250 within one year and the balance periodically; Genet — 5 years' probation and a $1,000 fine plus costs, payable $50 per month; Riszkiewicz — 2 years' probation and a $400 fine plus costs; Korch — 3 years' probation and a $1,000 fine plus costs, payable $75 per month; Kent — 1 year probation and a $250 fine plus costs, payable within 11 months; and Munk — 6 months' probation and a $150 fine plus costs, payable within 6 months. Munk's probation was later extended by 6 months, and again by 3 months.

This court in *People v. McCabe,* 49 Ill.2d 338 (opinion filed October 15, 1971; rehearing denied November 24, 1971), held that a defendant convicted of the illegal sale of marijuana under section 38 of the Uniform Narcotic Drug Act was denied equal protection of the law under the Federal and Illinois constitutions and reversed the conviction. Between July 6, 1972, and March 3, 1973, each of these defendants filed a motion, based on *McCabe,* asking that his plea of guilty and conviction be stricken, that his probation be terminated, and that any fines and costs paid to the circuit clerk be refunded.

The circuit court ordered the probation of each of the defendants terminated and the payment of the balance due on their fines and costs remitted, but refused to vacate the convictions or order a refund of any part of the fines or costs that had been paid. In denying the relief requested by defendants, the circuit court held (1) that *McCabe* was not to be given retroactive application, and (2) that defendants had not appealed their convictions and could

not collaterally attack the judgments under the provisions of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72), the Habeas Corpus Act (Ill. Rev. Stat. 1973, ch. 65, par. 22), the Post-Conviction Hearing Act (Ill. Rev. Stat. 1973, ch. 38, par. 122—1 *et seq.*) or the holding of *People v. Warr* (1973), 54 Ill.2d 487. The appellate court held that *McCabe* operated retroactively, that defendants' convictions based on an unconstitutional statute were void, and that the trial court had inherent jurisdiction to vacate a void judgment. It affirmed the trial court's termination of the probations and reversed and remanded the cases with directions to grant the other relief requested by defendants.

On October 30, 1970, in the circuit court of Cook County, Allen J. Meyerowitz pleaded guilty to the charge of unlawful possession of marijuana in violation of section 38 of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—40). He was placed on 3 years' probation and fined $500, which he began paying at the rate of $15 per month. On April 14, 1972, he filed a motion, based on *McCabe,* requesting that his conviction be set aside, his probation terminated, and that the $260 he had paid on his fine to the Department of Probation be returned to him with interest. The circuit court set aside the judgment of conviction, terminated the probation and remitted the payment of the balance due on the fine, but it refused to order the refund of $260 that had been paid on the fine, plus interest. The appellate court affirmed the judgment on the ground that the payments on the fine had been made voluntarily by defendant and that he could not now demand a refund.

In the petition for leave to appeal filed in 46933 the People contend that the judgments were not rendered void by reason of *McCabe* "but are, at the very most, voidable when brought before the Court for review in a proper procedural fashion; namely, by direct appeal, Post Conviction Petition, Habeas Corpus, or relief under Section 72 of

the Civil Practice Act. No other remedy is available." In their brief it is contended that "the rule of *McCabe* should not be given retroactive application to the extent of requiring that refunds be made of fines paid as punishment for pre-*McCabe* marijuana convictions." They argue that the "*McCabe* Rule" does not meet the United States Supreme Court criteria for retroactivity for the reason that it "was not designed to protect the integrity of the fact-finding process but, rather, to eliminate the shockingly harsh minimum jail sentence imposed by the Narcotic Drug Act for a first marijuana conviction." The People argue that "*McCabe* should not be held to be retroactive as to fines because county officials, in good-faith reliance on the presumed validity of the Narcotic Drug Act, collected fines from defendants convicted under the Act and mingled the monies with the general corporate revenues that are expended in the course of official business." Alternatively they suggest that "this court, in the exercise of its supervisory jurisdiction, should hold that defendants who are convicted under statutes subsequently held to be unconstitutional must, in order to recover fines paid on their convictions, file their motions for refunds within four months of the date of the judicial decision that invalidates the convictions."

In their brief in 46588 the People contend that the appellate court correctly held that the payments were voluntarily made and its judgment should be affirmed.

We consider first whether the defendants may properly attack the judgments of conviction in their motions to terminate probation. This court has recognized that considerations of justice and fairness require that an accused who asserts a substantial denial of his constitutional rights in the proceedings in which he was convicted be afforded a procedure by which the challenged proceedings may be reviewed. To that end, in *People v. Davis* (1968), 39 Ill.2d 325, acknowledging the "obvious advantages in purging oneself of the stigma and disabilities which

attend a criminal conviction" (39 Ill.2d 325, 329) we construed the Post-Conviction Hearing Act to permit relief even though the petitioner was no longer incarcerated. In *People v. Pier* (1972), 51 Ill.2d 96, we held the Post-Conviction Hearing Act applicable not only to the proceeding in which the petitioner's guilt was determined but also to the proceedings in which his probation was revoked. In *People v. Warr* (1973), 54 Ill.2d 487, we noted the injustice which would result if the defendant were restricted to the "three familiar statutory methods of collateral attack upon a judgment" (54 Ill.2d 487, 491) and in the exercise of our supervisory jurisdiction provided the procedure by which a defendant convicted of a misdemeanor could assert that in the proceedings in which he was convicted he had suffered a substantial denial of his constitutional rights. In *People v. Sarelli* (1973), 55 Ill.2d 169, on the basis of *McCabe,* we ordered vacated a judgment of conviction attacked on that ground for the first time in the appeal from the dismissal of a post-conviction petition.

Here the defendants were on probation and the circuit court had continuing jurisdiction of each defendant until his probation was terminated. Section 5—6—2 of the Unified Code of Corrections provides:

"(c) The court may at any time terminate probation or conditional discharge if warranted by the conduct of the offender and the ends of justice." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—2(c).)

"A void judgment can be impeached at any time in any proceeding whenever a right is asserted by reason of that judgment, and it is immaterial, in a consideration of the validity of the judgment, whether or not the time for review by appeal has expired." (*Reynolds v. Burns* (1960), 20 Ill.2d 179, 192.) The validity of the judgments was properly put in issue by defendants' motions to terminate the probations, and the appellate court correctly held that the judgments should be vacated.

We consider next the People's contention that *McCabe* should not be given complete retroactive application. In *People v. Hudson* (1971), 50 Ill.2d 1, *People v. Sarelli* (1973), 55 Ill.2d 169, and *People v. Pullum* (1974), 57 Ill.2d 15, we applied *McCabe* retroactively in reversing (*Hudson* and *Pullum*) and vacating (*Sarelli*) judgments of conviction for the unlawful sale (*Hudson* and *Sarelli*) and possession (*Pullum*) of marijuana under section 38 of the Uniform Narcotic Drug Act. Assuming resolution of the question of an appropriate procedure through which to request the remedy sought by defendants, the People acquiesce in the retroactive application of *McCabe* to terminate the probation and to vacate the judgments of conviction of these defendants, but argue that *McCabe* should not be given retroactive effect to the extent of requiring refunds of fines paid as punishment for pre-*McCabe* marijuana convictions.

In support of the contention that *McCabe* should be given only partial retroactive effect, the People argue that we should use the principles applied in *People v. Ellis* (1973), 53 Ill.2d 390, which are those set forth in *Linkletter v. Walker* (1965), 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731, and are further discussed and applied in other Supreme Court opinions dealing with the retro-activity of a new procedural rule. (See, *e.g., Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *Desist v. United States* (1969), 394 U.S. 244, 22 L. Ed. 2d 248, 89 S. Ct. 1030.) In *Ellis* we said: "[T] hree criteria are relevant for determining the retroactivity of the new standard: the purpose to be served by it; the extent of reliance by law-enforcement authorities on the existing standards; and the effect on the administration of justice of a retroactive application of the new standard." (53 Ill.2d 390, 394.) Under these criteria if the new standard does not go to the integrity of the fact-finding process but its purpose is, for example, to deter official invasion of constitutionally protected privacy and to effectively deter

illegal police action; and if the conduct now questioned was permissible at the time it was committed under rules upon which the officials in good faith relied; and if the purpose of the new rule would not be thwarted by prospective application, and retroactive application would cause a substantial burden on the administration of justice; then the new rule will be given prospective application. (*People v. Ellis* (1973), 53 Ill.2d 390.) If, however, the new rule substantially improves the accuracy of the fact-finding process at trial and consequently raises serious questions about the accuracy of convictions in past trials, the new rule will be given retroactive application despite good-faith reliance by State or Federal authorities or the burden it may impose on the administration of justice. *Williams v. United States* (1971), 401 U.S. 646, 28 L. Ed. 2d 388, 91 S. Ct. 1148.

Following this "three criteria" approach, the People argue that the holding in *McCabe* was not designed to protect the integrity of the fact-finding process but, rather, to eliminate the harsh minimum jail sentence imposed by the Uniform Narcotic Drug Act for a first marijuana conviction; that county officials, in good-faith reliance on the presumed validity of the Uniform Narcotic Drug Act, collected fines from defendants convicted under the Act and mingled the monies with the general corporate revenues that are expended in the course of official business; and that requiring a refund of these fines would impose an undue financial burden on the counties. They argue that *McCabe,* therefore, should not be given retroactive application requiring refund of fines that have been paid under void convictions.

In *United States v. United States Coin and Currency* (1971), 401 U.S. 715, 28 L. Ed. 2d 434, 91 S. Ct. 1041, the Supreme Court, despite the fact that there had been good-faith reliance by Federal authorities on the prior law and that retroactive application of the new ruling would impose a burden on the administration of justice, gave

complete retroactive application to a new ruling which did not substantially improve the accuracy of the fact-finding process at trial. In that case Donald J. Angelini had been convicted (*United States v. Angelini* (7th Cir. 1965), 346 F.2d 278) of violating a Federal statute which imposed a special occupational tax on the business of accepting wagers. The statute required that persons engaged in the business of accepting wagers file registration statements and tax returns that contained information which could incriminate them under State laws prohibiting gambling activities. The Federal government thereafter instituted a libel proceeding for the forfeiture of $8,674 found in Angelini's possession at the time of his arrest. The district court found that the money was being used in a bookmaking operation in violation of the Internal Revenue Code, and ordered forfeiture. Relying on *United States v. Kahriger* (1953), 345 U.S. 22, 97 L. Ed. 754, 73 S. Ct. 510; and *Lewis v. United States* (1955), 348 U.S. 419, 99 L. Ed. 475, 75 S. Ct. 415, which held that the statutory obligation to file the return and pay the tax was not compulsory self-incrimination proscribed by the Fifth Amendment, the court of appeals affirmed the judgment. (*United States v. United States Coin and Currency* (7th Cir. 1967), 379 F.2d 946.) Subsequently the Supreme Court, in *Marchetti v. United States* (1968), 390 U.S. 39, 19 L. Ed. 2d 889, 88 S. Ct. 697, and *Grosso v. United States* (1968), 390 U.S. 62, 19 L. Ed. 2d 906, 88 S. Ct. 709, partially overruled *Kahriger* and *Lewis,* and held that individuals who properly assert their privilege against self-incrimination as a ground for their failure to comply with the filing and payment aspects of the wagering tax statute may not be criminally punished for failure to comply with the provisions of the statute. On remand from the Supreme Court for further consideration in light of *Marchetti* and *Grosso* the court of appeals held that Angelini could not, constitutionally, be punished directly or indirectly by compelling forfeiture of the money seized,

and ordered the entry of judgment in his favor. 393 F.2d 499.

The Supreme Court granted the government's petition for *certiorari* (393 U.S. 949, 21 L. Ed. 2d 361, 89 S. Ct. 375) and affirmed the court of appeals. It held that "From the relevant constitutional standpoint there is no difference between a man who 'forfeits' $8,674 because he has used the money in illegal gambling activities and a man who pays a 'criminal fine' of $8,674 as a result of the same course of conduct." (401 U.S. 715, 718, 28 L. Ed. 2d 434, 437, 91 S. Ct. 1041, 1043.) It rejected the government's contention that *Marchetti* and *Grosso* should not be retroactively applied and stated: "Unlike some of our earlier retroactivity decisions, we are not here concerned with the implementation of a procedural rule which does not undermine the basic accuracy of the factfinding process at trial. [Citations.] Rather, *Marchetti* and *Grosso* dealt with the kind of conduct that cannot constitutionally be punished in the first instance." (401 U.S. 715, 723, 28 L. Ed. 2d 434, 440, 91 S. Ct. 1041, 1045.) From this it concluded, "No circumstances call more for the invocation of a rule of complete retroactivity." 401 U.S. 715, 724, 28 L. Ed. 2d 434, 441, 91 S. Ct. 1041, 1046.

The People argue that this case is distinguishable from *Coin and Currency* in that the *Marchetti* and *Grosso* rule dealt with the kind of conduct that cannot constitutionally be punished at all, whereas in *McCabe* there was no question of the power of the General Assembly to proscribe the sale or possession of marijuana and our decision was concerned only with the severity of the sentence. We recognize this distinction between *Marchetti* and *Grosso* and *McCabe* but are not persuaded that it requires a different result. We are of the opinion that the vice of punishing a defendant under a statute subsequently declared unconstitutional is the same whether the proscribed conduct is constitutionally immune from punishment as in *Marchetti* and *Grosso,* or whether, as in

*McCabe,* the conduct is subject to punishment but the penalty provided and imposed is unconstitutional. We hold that *McCabe* must be given complete retroactive application.

We consider next the People's contention made concerning defendant Meyerowitz, but applicable to the other defendants, that the payments made on the fine were voluntary and not made under duress. We do not agree. In each instance, payment of the fine was a condition of the probation (Ill. Rev. Stat. 1969, ch. 38, par. 117—2(b), now Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—3(b)), and willful refusal to pay the fine could have resulted in revocation of the probation and the incarceration of the defendant (Ill. Rev. Stat. 1969, ch. 38, par. 117—3(d), now Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(d)).

The People contend that a defendant's voluntary guilty plea "forecloses inquiry into the constitutional issues now relied upon by defendant to support his argument for a return of the fine." Defendant's plea of guilty to illegal possession of marijuana under section 38 of the Uniform Narcotic Drug Act, subsequently declared unconstitutional in *McCabe,* did not waive his right to later collaterally attack the judgment of conviction and punishment based on the unconstitutional statute. (*United States v. Lewis* (5th Cir. 1973), 478 F.2d 835; *DeCecco v. United States* (1st Cir. 1973), 485 F.2d 372; see *People v. Sarelli* (1973), 55 Ill.2d 169.) We hold that the defendants are entitled to a refund of the fines and costs they have paid as a result of their void convictions. No interest is due for the reason that the fines and costs were collected in good faith, and there is no statutory provision for interest in this situation. *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill.2d 415.

The fines and costs collected have been paid into the county treasury (Ill. Rev. Stat. 1973, ch. 53, pars. 18(a) and 19), and relying on sections 2—103 and 2—203 of the

Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, pars. 1—101 through 10—101), which deal with adoption or failure to adopt enactment—failure to enforce law (section 2—103) and Acts under unconstitutional, invalid or inapplicable enactment (section 2—203), the State's Attorneys of Jackson and Cook Counties argue that a county cannot be held liable for fines and costs illegally collected. We do not agree. The Local Governmental and Governmental Employees Tort Immunity Act, as its title implies, applies to torts. An action to recover fine monies paid under an unconstitutional statute would more nearly resemble the common law action for money had and received. *Board of Highway Commissioners v. City of Bloomington,* 253 Ill. 164.

During the course of oral argument the question arose whether defendants could obtain a refund of the fines and costs paid under the void convictions in these proceedings, or whether separate proceedings were necessary. It was also suggested that the counties should be made parties to any proceedings in which refunds are sought. Similar situations arose in the Federal courts after the Supreme Court's decision in *Coin and Currency.* In *United States v. Lewis* (5th Cir. 1973), 478 F.2d 835, *Pasha v. United States* (7th Cir. 1973), 484 F.2d 630, and *DeCecco v. United States* (1st Cir. 1973), 485 F.2d 372, individuals who had been convicted under the statute declared unconstitutional in *Marchetti* and *Grosso,* filed motions in the nature of applications for writs of error *coram nobis* to set aside their convictions and recover fine monies paid, and in *Pasha,* the value of an automobile seized, under those convictions. In each instance the government conceded that the *coram nobis* proceeding was a proper action for vacating the conviction, but it argued that a monetary judgment could be obtained only in an action under the Tucker Act, 28 U.S.C. sec. 1346, and not in a *coram nobis* proceeding. In each case in order to avoid a multiplicity of

actions, the court rejected the government's contention.

In *Lewis* the court stated: "Just as the imposition of a fine is an incident of a criminal conviction, so is the direction for repayment an incident to the vacating and setting aside of the conviction." (478 F.2d 835, 836.) In *Pasha* the court stated: "We have not hesitated to ignore labels in pleadings when to do otherwise substantial prejudice might have resulted. Where, as here, equitable considerations abound, we sustain the district court's judgment on the ground that having properly taken jurisdiction of the motion to set aside the conviction, the court could also decide to avoid piecemealing the cause of action and save judicial resources by disposing of all issues before it." (484 F.2d 630 633.) In *DeCecco* the government contended that it would be deprived of the benefits of the statute of limitations and of opportunities for set-off and counterclaim which are expressly provided by the Tucker Act, but the court stated that these matters "could have been presented adjunct to DeCecco's claim in the coram nobis proceeding." (485 F.2d 372, 374.) We agree with these views.

The State's Attorneys charged with the duty to prosecute these defendants (Ill. Rev. Stat. 1973, ch. 14, par. 5(1)) and collect the fines and pay them over to the county treasurer (Ill. Rev. Stat. 1973, ch. 53, pars. 18(a) and 19) are also respectively charged with the duty "to defend all actions *** brought against his county ***" (ch. 14, par. 5(4)). The counties received the fine money as incidents to the convictions without being joined as parties to the criminal proceedings. Counties can be ordered to pay attorney's fees for the representation of indigent defendants without being made parties to the proceedings for that purpose (Ill. Rev. Stat. 1973, ch. 38, par. 113–3), and we are not persuaded that there is any necessity for their being joined in these proceedings. We are of the opinion that the money, having been received in payment of fines imposed as an incident to judgments of conviction,

should be ordered refunded as an incident to the vacation of the judgments under which it was ordered paid.

For the reasons stated herein the judgment of the appellate court in No. 46588 is reversed and the causes are remanded to the circuit court of Cook County for further proceedings. The judgment of the appellate court in No. 46933 is affirmed and the cause is remanded to the circuit court of Jackson County for further proceedings.

*46588 — Reversed and remanded,*
*with directions.*
*46933 — Affirmed and remanded,*
*with directions.*

MR. CHIEF JUSTICE UNDERWOOD, dissenting:

I do not agree that *McCabe's* retroactive effect must be so far extended as to require a refund of the fines and costs paid by these defendants.

As I understand the majority opinion, it relies principally upon *Coin and Currency, Marchetti* and *Grosso* in concluding that completely retroactive application of *McCabe* is required. I find that conclusion surprising since those decisions of the United States Supreme Court dealt with cases in which the conduct of the defendants could not, constitutionally, be punished at all, whereas *McCabe* involved admittedly punishable conduct, only the penalty for which was constitutionally impermissible. That there is a difference, and that such difference is significant in determining whether and to what extent retroactive effect will be accorded a decision, is evident throughout the several opinions in *Coin and Currency.*

While the majority cites our decisions in *Hudson, Sarelli* and *Pullum* as authority for the result reached, *Hudson* and *Pullum* involved defendants whose convictions were on direct appeal—only *Sarelli,* in my judgment, compels a conclusion that the judgments of conviction here must be vacated and probation terminated. That action imposes no substantial burden upon any govern-

mental entity or agency. But refunding fines and costs will involve burdens the extent of which is uncertain for, if they must be refunded here where they were paid as a result of negotiated guilty pleas, they must also, I assume, be refunded in every other case, whether the judgments resulted from pleas or otherwise, and without limitation as to time or amounts. To this I cannot agree, for I am aware of no constitutional requirement necessitating such a result, and I find the arguments therefor unpersuasive.

I would affirm the judgment of the appellate court in No. 46588, and reverse the judgment of the appellate court in No. 46933 insofar as it reversed the judgment of the circuit court of Jackson County.

MR. JUSTICE RYAN, also dissenting:

I join in the dissent of the Chief Justice and in addition question the authority of this court in this proceeding to order or to direct the circuit court upon remand to order the counties involved to refund the fines which have been paid.

The opinion glosses over the fact that the counties are not parties to these proceedings by stating that the counties received the fine money as an incident to the conviction without being joined as parties to the criminal proceedings and that they can be ordered to pay attorney fees for the representation of indigent defendants without being made parties to the proceedings for that purpose. These results of course are provided for by statute. There is no statute which supports the order in this case.

The fines that were collected were paid to the county treasurer pursuant to statute. (Ill. Rev. Stat. 1973, ch. 53, par. 18(a).) The county treasurer in turn must hold these fines in a separate fund which is used to pay the salaries of the State's Attorney and his assistants and other expenses. On July 1 of each year the county treasurer must transfer the balance remaining in this fund to the general corporate fund of the county. (Ill. Rev. Stat. 1973, ch. 53, par 19.)

Thus, the fines that were paid have now become a part of the general corporate fund of the counties involved.

Money is paid from the general corporate fund as provided by law or on order of the county board. The purposes for which the general fund may be expended and the amount that may be expended for these purposes are limited by the provisions of the annual budget and appropriations ordinance. (Ill. Rev. Stat. 1973, ch. 34, pars. 2102-2104.) The procedures to be followed by the county board in ordering payments from the general corporate fund are provided by statute. Section 34 of the Counties Act (Ill. Rev. Stat. 1973, ch. 34, par. 604) provides the manner in which judgments against the county are paid and directs that the orders for payment of judgments be paid as other county debts. This section further authorizes the county board to levy taxes for the payment of outstanding judgments against the county. However, payment of the order that the fines in this case be refunded cannot be made under the authority of this section because such an order does not constitute a judgment against the county.

In the absence of a judgment, one who has a claim against a county must file a verified claim with the county board which may be allowed or disallowed by that body. If the claim is disallowed, then the claimant may appeal from that decision to the circuit court. (Ill. Rev. Stat. 1973, ch. 34, par. 605.) The claimant is then in a position to secure a judgment against the county which may be collected as other judgments under the provisions of section 34 (par. 604) and for the payment of which the county may levy taxes.

The order to refund the fines which the majority opinion proposes is not binding on the county and cannot be enforced. The supreme court of this State should not enter an order or direct that an order or judgment be entered which there is no means to enforce. Even with the order or judgment for refund of the fines the claimant will

still be required to proceed under section 35 (par. 605) by filing the claim with the county board and, if it is denied, proceeding to judgment. Only then will there be a valid and enforceable judgment against the county.

The majority rationalizes that since the State's Attorney represents the People in this case, and by statute must also represent the county, somehow that makes an order entered in this proceeding binding on the county. I think that it may be possible to make the county a party to these proceedings or to institute a separate action against the county but until the county becomes a party to the proceeding for a refund no binding judgment or enforceable order can be entered against it. The State's Attorney also may prosecute violations of the Illinois Vehicle Code. (Ill. Rev. Stat. 1973, ch. 95½, par. 16—102.) In certain situations the fines are paid to cities, villages, park districts, the road and bridge funds of townships or road districts and to certain other funds. (Ill. Rev. Stat. 1973, ch. 95½, par. 16—105.)ʹ If a particular section of the Vehicle Code were to be held invalid, I do not see how a court could enter a valid and enforceable judgment for the return of the fines against a city, village, township, or road district unless that entity is a party to the proceedings. See 23 Ill. L. & Pr. *Judgments* sec. 13 (1956).

The Federal cases cited in the majority opinion in support of the position that a refund order may be entered in this proceeding to avoid multiplicity of suits and piecemeal litigation are inapposite. In the cases cited the United States was a party to the proceedings and was ordered to refund the fines. The question was not whether the proper party was before the court but whether the proceedings for refund of the fines could be brought in the pending proceeding or in another action.