THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN A. PACE, Defendant-Appellant.

(Nos. 58733, 61074 cons.;

First District (5th Division)—November 26, 1975.

Paul Bradley and Margaret Maxwell, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE BARRETT delivered the opinion of the court:

Brian Pace and Robert Montgomery were indicted for attempt murder in violation of section 8—4 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, § 8—4) and aggravated battery in violation of section 12—4(b)(1) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, § 12—4(b)(1)) of Justo Rivera and Angel Rivera. Both defendants were released on bail. On October 26, 1970, defendants were in court when their case was reached for trial. At that time defendants' motion to suppress identification was denied. A panel of 50 veniremen was then brought into the courtroom and sworn to answer questions as to their qualification to act as jurors. The venire was given an initial orientation, the indictment was read, and defendants were introduced to the prospective jurors. A list of prospective witnesses was read to the veniremen and, after the judge gave further orientation and admonitions, he adjourned the case until the following morning.

The next morning when court reconvened, defendant Pace failed to appear. On inquiry, Montgomery advised the court that from his con-

versation with Pace the previous night he believed that Pace had left and was not going to return. The trial court denied the motion of defense counsel to withdraw as counsel for Pace and a later motion for severance and a continuance and ruled that the trial had already begun and would proceed without Pace. Defendant was then tried *in absentia.*

The jury returned a verdict of guilty against Pace of attempt murder and aggravated battery of Justo Rivera and aggravated battery of Angel Rivera. After having postponed sentencing in hopes of securing Pace's presence, the court, on December 10, 1970, pronounced a sentence of 8-20 years on the count of attempt murder of Justo Rivera, and 5 to 10 years on the count of aggravated battery of Angel Rivera, the terms to run consecutively. The court imposed this sentence upon the defendant's return to Chicago in 1972.

Defendant raises three issues on appeal: whether he was deprived of due process of law for being tried *in absentia* where he voluntarily absented himself from the courtroom after the veniremen were sworn to answer questions, the indictment and a list of possible witnesses was read and the veniremen were given their orientation and admonitions; whether the evidence showed that he was so intoxicated that he could not have formulated the specific intent required to commit the offenses and therefore was not proven guilty beyond a reasonable doubt; whether his consecutive sentence of 5-10 years for aggravated battery and 8 to 20 years for attempt murder should be reduced in accordance with the sentencing provisions of the Illinois Unified Code of Corrections.

The evidence introduced at trial showed that on the Sunday afternoon of August 10, 1969, Justo Rivera, his wife, their children and Luis Pagan, another child, went to Lincoln Park to play baseball. They took sporting equipment with them, including several mitts, a ball and a bat. Two men approached the family, one of whom was later identified as Robert Montgomery, asked Justo Rivera if they could play. Mr. Rivera told him no and Montgomery walked a short distance away. Defendant at that point proceeded to argue with Justo Rivera, swearing, and threatening to kill him. While Justo Rivera bent over to pick up some of the equipment, Montgomery grabbed and held him from behind, permitting defendant to punch Rivera. Eleven-year old Angel Rivera grabbed the baseball bat and began hitting his father's attackers on the back and the legs. Defendant stopped hitting Justo Rivera and ran after Angel whom he then kicked in the stomach and hit with the bat. As Justo Rivera, who was still being held by Montgomery, tried to get up and help his son, Pace turned and began to strike Justo Rivera several times with the bat. Luis Pagan found a police canine unit and toured the park with the officer until they found the defendants, whom Pagan identified as

the assailants. Pace and Montgomery were placed under arrest and were subsequently identified by others who had witnessed the incident. Justo Rivera was taken to the hospital where he remained unconscious for five days. Angel Rivera was permitted to go home after receiving stitches for his facial wounds. The Rivera family subsequently moved back to Puerto Rico, but returned to Chicago for the trial.

James O'Kennard testified that he was in Lincoln Park on August 10, 1969, and that he observed defendant hitting a child with a baseball bat and later saw defendant hit Justo Rivera five times on the head with a bat while being held by Montgomery. He said that he suspected that defendant was under some form of sedation.

Gerald Stevens testified that he observed defendant hitting both Angel and Justo Rivera and that he did not see any aggressive moves on the part of the Rivera family to provoke the attack. He stated that defendant did not appear to be intoxicated or under the influence of drugs because he did not stagger.

Dennis McQuen testified for the defendant that he attended a rock music festival with defendant and Montgomery in Lincoln Park on August 10, 1969, and that they joined three young women with whom they drank some wine. Though the number varied, there were usually at least nine people sitting in a circle sharing numerous quart bottles of wine. He felt defendant was drunk when he left the group because he was no longer well coordinated and seemed very happy.

Robert Montgomery testified that he and defendant sat with some people and drank wine over a period of four or five hours. He estimated that defendant consumed about two quarts of wine. He has no recollection of any of the events between the time he left the group and when he was stopped by the police.

Morgan Lloyd, the arresting officer, testified that on August 10, 1969, he spoke with Luis Pagan about the incident and then proceeded to search for the defendants. He arrested the defendants after they had been identified by Pagan. He said he subsequently spoke with Mr. O'Kennard, Mr. Stevens and the Rivera family.

OPINION

The first issue raised on appeal is whether defendant was deprived of due process of law for being tried *in absentia* where he voluntarily absented himself from the courtroom after the veniremen were sworn to answer questions, the indictment and a list of witnesses was read and the veniremen were given their orientation and admonitions.

■■ A defendant in a criminal case has a constitutional right to be present at all stages of his trial. (*People v. Mallett*, 30 Ill.2d 136, 195

N.E.2d 687.) However, a defendant may not prevent his trial by voluntarily absenting himself therefrom, and a defendant in a criminal case who has been released on bail has a duty to present himself in court. (*People v. Steenbergen*, 31 Ill.2d 615, 203 N.E.2d 404.) It has long been held that where a defendant is at liberty on bail and voluntarily absents himself from his trial after it has begun, he waives the right to be present and the court can proceed without him. *Diaz v. United States*, 223 U.S. 442, 56 L.Ed. 500.

Defendant, in arguing that he has absented himself before his trial began, asks this court to rely on the holding of *People v. Davis*, 39 Ill. 2d 325, 235 N.E.2d 634. In that case our Supreme Court in reversing defendant's conviction, stated that it would be a deprivation of defendant's constitutional rights to be tried *in absentia* where he fails at any time to appear in court for his trial by jury.

The circumstances surrounding the trial in the instant case cannot be compared to those found in *Davis*. Here, defendant was present in the courtroom on October 26, 1970, at which time his attorney answered that defendants were ready to proceed to trial. Defendants' motion to suppress identification and the testimony relating thereto of three witnesses was heard. After this motion was denied a jury venire was brought into the courtroom. The veniremen were sworn to answer questions as to their qualifications and a preliminary orientation as to their duties was given by the court. The defendants were introduced to the jury, the indictments and a list of possible witnesses was read. After further orientation and admonitions the court recessed until the following morning at which time the selection of the jury commenced. Defendant failed to present himself to the court at that time and the trial continued without him.

■■ Though *Davis* sets the outer parameter in determining that a defendant may not be tried *in absentia* where he fails to present himself at any time in court, we are guided by the language in *Hopt v. Utah*, 110 U.S. 574, 28 L.Ed. 262, in determining at what stage of a judicial proceeding a defendant's subsequent absence from the courtroom becomes a waiver of his right to be present at his trial. The United States Supreme Court in *Hopt* stated that:

"For every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial, where the indictment is for a felony, the trial commences *at least* from the time when the work of empanelling a jury begins." (Emphasis added.) 110 U.S. 574, 578, 28 L.Ed. 262, 265.

■■ Based upon this proposition, we find that the judicial proceedings of October 26, 1970, were indeed the work of empaneling the jury, and

marked the beginning of defendant's trial. To hold otherwise would permit defendant to frustrate and impede the judicial process by monopolizing the time of both the court and the venire and then profit from his own wrong by voluntarily absenting himself. We have previously stated that although this court is loath to proceed with court hearings in defendant's absence, we cannot encourage defendants to treat their court appearances as discretionary. (*People v. Stubbs*, 25 Ill.App.3d 181, 323 N.E.2d 26.) Defendant was not deprived of due process of law where he voluntarily absented himself after his trial had begun, and the court proceeded to continue the trial without him.

Defendant argues that his absence from trial was not an effective waiver because it was not an intentional relinquishment or abandonment of a known right or privilege under *Johnson v. Zerbst*, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019. We find that the recent United States Supreme Court decision in *Taylor v. United States*, 414 U.S. 17, 38 L.Ed.2d 174, 94 S.Ct. 194, where defendant failed to return to the afternoon session of his trial, is dispositive of this issue. In finding that Taylor voluntarily absented himself, the trial court relied on the testimony of defendant's wife that she and defendant separated after the morning session, that defendant had not appeared ill, and that she has not heard from him since. The Supreme Court, in rejecting the application of *Johnson v. Zerbst* to the circumstances in *Taylor*, held that "[i]t seems equally incredible to us, as it did to the Court of Appeals, 'that a defendant who flees from a courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—would not know that as a consequence the trial could continue in his absence.'" 414 U.S. 17, 20, 38 L.Ed.2d 174, 178.

■■ In considering the circumstances of the instant case, such as defendant's presence throughout the proceedings on October 26, 1970, his knowledge that the five members of the Rivera family who had moved back to Puerto Rico were now in the courtroom ready to testify against him, and the statement of the codefendant Montgomery that from his conversations with defendant, he did not believe that defendant was going to return, we can only conclude that defendant knowingly and voluntarily waived his right to be present at the continuation of his trial the following day.

In his second issue on appeal defendant contends that his consumption of alcohol made him incapable of forming an intent to commit murder and aggravated battery, and that since the State failed to prove the intent to commit these offenses beyond a reasonable doubt, the conviction must be reversed.

■■■ The legislature has provided that where an individual voluntarily

consumes alcohol he is criminally responsible for his conduct unless such condition negatives the existence of a mental state which is an element of the offense. (Ill. Rev. Stat. 1969, ch. 38, par. 6—3(a).) To negative the specific intent required for defendant's offenses, and thus be a legal excuse, defendant's condition of intoxication must be so extreme as to suspend all reason. (*People v. Rose*, 124 Ill.App.2d 447, 259 N.E.2d 393.) The evidence in this case falls short of this requirement. Merely being "drunk" or "intoxicated" is no defense. (*People v. Williams*, 14 Ill.App.3d 789, 303 N.E.2d 585.) Therefore, we believe that defendant's condition did not negative the required specific intent and that the evidence supports the jury's findings of guilt beyond a reasonable doubt. Defendant's conviction will not be reversed.

In his third issue on appeal, defendant contends that his consecutive sentence of 5-10 years for aggravated battery and 8-20 years for attempt murder be reduced in accordance with the sentencing provisions of the Illinois Unified Code of Corrections which became effective on January 1, 1973.

The Code in section 8—2—4 provides that:

"Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted has not reached the sentencing stage or a final adjudication, then for purposes of sentencing the sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced." Ill. Rev. Stat. 1973, ch. 38, § 1008—2—4.

Under the classification of offenses of the Code, the offense of aggravated battery is a Class 3 felony. (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(d).) Section 5—8—1(c)(4) of the Code provides that for a Class 3 felony the minimum sentence "shall not be greater than one-third of the maximum term set in that case by the court." Ill. Rev. Stat. 1973, ch. 38, § 1005—8—1(c)(4).

This court finds that since no final adjudication of this matter has been reached (*People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269), that defendant's sentence must be modified in accordance with the above provisions. We therefore reduce defendant's minimum sentence for aggravated battery to three years and four months.

Defendant was sentenced to a term of 8 to 20 years on the charge of attempt murder. Under the Unified Code of Corrections, attempt murder is a Class 1 felony (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(c)(1)), which requires a minimum term of four years "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." (Ill. Rev. Stat. 1973,

ch. 38, par. 1005—8—1(c)(2).) Since the term imposed is allowable under the Code, we will not disturb the sentence imposed by the trial court.

Defendant asks this court to modify his sentence for attempt murder so that it may run concurrently, rather than consecutively, with his sentence for aggravated battery. Section 5—8—4 of the Illinois Unified Code of Corrections provides that:

> "(b) The Court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court may set forth in the record."

We find that though the record demonstrates defendant's act to have indeed been a brutal one, a consecutive sentence is not required to protect the public from any further criminal conduct by the defendant. Therefore, we believe that the sentence for aggravated battery should run concurrently with the sentence for attempt murder.

For the reasons stated herein, the judgment of conviction for attempt murder is affirmed. The judgment of conviction for aggravated battery is also affirmed, with the sentence reduced as stated; and this cause is remanded for correction of the *mittimus* to reflect concurrent sentencing.

Affirmed, as modified, in part. Mittimus amended.

DRUCKER and SULLIVAN, JJ., concur.