THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY E. OAKS, Defendant-Appellant.

First District (5th Division)   No. 1—87—1182

Opinion filed March 9, 1990.

Randolph N. Stone, Public Defender, of Chicago (Stephanie L. Ellbrogen, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and William Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

After a jury trial, defendant, Henry E. Oaks, was convicted of unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3) and sentenced to a two-year prison term to run consecutively with a 20-year term he previously received for an armed robbery conviction. On appeal, he contends that the trial court abused its discretion in making his two-year term a consecutive term. We affirm.

The State presented evidence that shortly after noon on August 16, 1985, Darryl Watkins went to see defendant, whom he had known for 17 years, at his apartment at 1152 North Harding in Chicago. Watkins entered defendant's apartment through the back door, and after he did so, defendant locked both the back door burglar gates and the door itself. Watkins followed defendant into the bedroom, where defendant was going to make a telephone call, and saw him reach into the bedroom closet and pull out a loaded .357 Magnum gun. Watkins then walked into the living room and waited for defend-

ant to complete his call. About a minute later, defendant entered the living room with the gun drawn and told Watkins he was not going anywhere because he was a "snitch," having made a statement to some people about defendant's doing something "weird." Defendant then pulled out a pair of handcuffs and ordered Watkins to put his hands behind his back. When Watkins refused, defendant pointed the gun at the back of his head. Watkins then put his hands behind him, was handcuffed by defendant, and was ordered to walk to the bedroom closet.

When Watkins arrived at the bedroom closet, which was about two feet long by three feet wide, defendant told Watkins that he should really shoot him then. Instead, he tied Watkins' legs with an extension cord, shoved a sock in his mouth, and wrapped another sock around his head to keep the first sock in place. Defendant then kicked Watkins into the closet and closed the door behind him, bracing the door with a chair.

While Watkins was in the closet, he heard defendant talking, saying someone's name and asking whether Watkins had ever said anything about him to "them." A short while later, he heard the telephone ring and defendant saying how he would like to kill Watkins and asking what "they" should do with the body. He heard defendant then asking someone to bring a hypodermic needle so that they could inject Watkins with poison. During this telephone call, Watkins managed to untie his ankles and was in the process of removing the sock from his mouth when, suddenly, defendant opened the door. Defendant cocked his gun and pointed it at Watkins and dared him to try to escape. He then retied and gagged Watkins, warned him not to again try to escape, and closed the closet door, again bracing it with a chair. Watkins remained in the closet overnight.

Early the following day, the closet door again was opened, and Watkins saw someone whom he recognized, Ike Taylor, sitting on a chair and defendant and another person standing with guns in their belts. Taylor told Watkins he was in serious trouble. Taylor then asked defendant if Watkins had been to the washroom and, when defendant said that he had not, Taylor untied and ungagged Watkins and led him to the bathroom. After Watkins had used the bathroom, Taylor gave him a glass of water and ordered him back into the closet. After Watkins had returned to the closet, Taylor told Watkins that his best move would be to leave town. Taylor then told him to remain in the closet because they did not yet know what they were going to do with him. The closet door again was shut, and the chair again was placed against the door. Watkins remained in the closet for the next two

days, leaving only on two occasions when defendant allowed him to use the bathroom.

At about 10:30 a.m. on August 19, Watkins heard defendant leave the apartment. He called out defendant's name and, when there was no answer, kicked open the closet door. He left the apartment by crawling under the front door burglar gates, cutting his shoulder and ripping his shirt as he did so. He then walked over to a neighboring apartment and asked a lady to call the police.

When the police arrived, the spoke to Watkins about what had happened. They noticed that Watkins was disheveled, with his torn shirt, and appeared excited and scared. They also noticed that he was handcuffed and had cut marks and bruises where the handcuffs were and blood on the back of his shirt. After talking to Watkins, the police arrested defendant as he was attempting to leave his apartment through the back door. The police then entered the apartment seeking any other offenders and found a .357 Magnum gun in the kitchen and an extension cord and socks in the bedroom closet.

The defendant admitted a prior acquaintance with Watkins but denied that he attempted to unlawfully restrain him on the dates in question. The parties stipulated that defendant had a 1976 aggravated battery conviction and recent convictions for armed robbery and unlawful use of weapon by felon arising out of that robbery.

After a jury found defendant guilty of unlawful restraint, the trial court conducted a sentencing hearing. At the hearing, the State asked for an extended-term sentence based upon defendant's prior convictions and asked that the sentence be made consecutive to a 20-year sentence he received for his armed robbery conviction. Defense counsel argued against the extended-term sentence and consecutive sentence on the basis that the robbery case and the unlawful restraint case were related in that Watkins was one of the main witnesses against defendant in the robbery case. After hearing these and other arguments and considering defendant's background, the court refused the extended-term sentence and sentenced defendant to two years in prison. The court, however, made that sentence run consecutively, concluding that defendant was a danger to the public based on the evidence of the three-day confinement of Watkins in the closet, the handcuffing, binding and gagging of Watkins, and "various times you and/or Mr. Taylor questioned Mr. Watkins as to certain events that occurred regarding that robbery and whether or not he was cooperating either with the police or in some way acting to your detriment." On the latter evidence, the court stated that it would not be in the interest of justice to permit abuse and threats against potential witnesses

in a criminal prosecution.

Defendant contends that the consecutive term was improper because the facts in the present case do not indicate that it was required to protect the public. He argues that his conduct was the result of a unique set of circumstances, involving someone he had known for a long time, and would not be likely to recur. We find no merit to these arguments.

A trial court should not impose a consecutive sentence "unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(b).) The trial court has wide discretion in deciding whether to impose a consecutive sentence, and a reviewing court should not reverse that decision unless there has been an abuse of discretion. *People v. Partee* (1987), 157 Ill. App. 3d 231, 272, 511 N.E.2d 1165, 1192.

We find that the nature and circumstances of the unlawful restraint and defendant's criminal background were sufficiently serious for the trial court to conclude that a consecutive term was necessary to protect the public from further criminal conduct by defendant. That defendant presents a risk to the public is evidenced by the manner in which he committed the crime in this case. Defendant pointed a loaded gun at Watkins, in one instance pointing it at the back of his head and in another instance cocking the gun, handcuffed him in such a manner as to cause him cut marks and bruises, bound his ankles with an extension cord, gagged him with a sock in the mouth and another sock around the head, and then locked him in a small, dark closet. Although the extension cord and socks were removed after the first day, defendant kept Watkins locked in this small, dark closet for three days. During this time, defendant made several threats to kill Watkins. Although the visible, physical harm to Watkins may not have been excessive, the fact that defendant kept him locked in a closet for three days, under a constant fear of death, makes this a serious crime and defendant a dangerous criminal.

The apparent reason for committing the unlawful restraint also bolsters the conclusion that defendant posed a public danger. The trial court concluded that he committed the crime to abuse and threaten a potential witness in a criminal prosecution against him. Considering first the evidence in this case, including the accusation that Watkins was a "snitch" for having told some people that defendant had done something "weird" and Taylor's statements to Watkins that he was in

serious trouble and should leave town, and then defense counsel's statement at the sentencing hearing that the unlawful restraint was related to defendant's armed robbery conviction because Watkins was one of the main witnesses against defendant in the robbery case, it was clearly proper for the court to arrive at this conclusion. That defendant committed the unlawful restraint for this purpose turns it into an even more substantial crime because it was as much a crime against our system of justice as it was against a single individual. The trial court recognized this factor at sentencing when it stated that it would not be in the interests of justice to permit a defendant to abuse and threaten a potential witness against him.

Defendant's criminal history further supports the trial court's determination. It includes a 1976 conviction for aggravated battery and 1986 convictions for the armed robbery and unlawful use of a weapon by a felon during that robbery. Considering this criminal past and the particular nature and circumstances of the unlawful restraint, we find that the trial court was acting within its discretion in imposing the consecutive sentence.

In *People v. Partee* (1987), 157 Ill. App. 3d 231, 511 N.E.2d 165, defendant was sentenced to a consecutive term of 10 years in prison for aggravated battery committed while on bail for a 1983 armed robbery for which he received a 30-year sentence. There the reviewing court, after first noting its limited role in reviewing a trial court sentence, affirmed the sentence on the bases that defendant had a criminal history including two armed robberies in 1973 and the 1983 armed robbery and the aggravated battery victim's injuries were rather severe, including lacerations to her face, throat and ear canal resulting in permanent disfigurement. Defendant, in the present case, has a similar criminal history. Although the present case does not include the same types of injuries as in *Partee*, the nature and circumstances of the offense can be deemed to reflect a similar propensity to lawless and violent behavior. Moreover, defendant not only committed another crime while being prosecuted for the armed robbery, but this crime was directed at one of the main witnesses to that robbery. This fact lends to this crime a more ominous dimension than the one committed in *Partee* because it was intended to impede the criminal justice system and not just harm one person. For this reason, as well as the other circumstances of the crime and defendant's criminal background, a consecutive term was proper.

Defendant cites *People v. Pace* (1975), 34 Ill. App. 3d 440, 339 N.E.2d 785, and *People v. Zadel* (1979), 69 Ill. App. 3d 681, 387 N.E.2d 1092, two cases in which consecutive terms were reversed, to

support his argument that the consecutive term was improper. We find these cases to be factually distinguishable. *Pace* involved a brutal, bat-wielding attack by a defendant, who had been drinking, against a family playing baseball in the park. Although defendant was convicted of both aggravated battery and attempted murder and sentenced to consecutive terms on each, there was no evidence that he had any prior convictions. *Zadel*, on the other hand, involved a situation where defendant pled guilty in 1970 to an armed robbery, and then, before sentencing, fled to Canada, where he developed a new life free of crime. Five years later he was extradited to New Jersey, where he was tried, convicted and sentenced on a murder he had committed prior to the robbery. He became a model prisoner during his incarceration and, while still serving his sentence, was extradited to Illinois and sentenced to a term in prison on the robbery with the term to run consecutive to the term he received on the New Jersey murder. Although there was evidence of the prior offense of murder, the intervening passage of time, both in Canada and in the New Jersey prison, established that he was sufficiently rehabilitated since the commission of the robbery approximately nine years earlier. The present case shows no such manifest rehabilitation as in *Zadel* or crime-free past as in *Pace* to justify a reversal. Defendant, by his prior offenses, has shown a past disregard for our criminal laws, and, by his acts in the commission of the unlawful restraint, has demonstrated a present disregard for our criminal laws and process. Under such circumstances, the trial court's imposition of the consecutive sentence was not an abuse of discretion.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

LORENZ and MURRAY, JJ., concur.