THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL McINNIS (Impleaded), Defendant-Appellant.

First District (4th Division)    No. 78-804

Opinion filed June 5, 1980.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Alphonse R. Tomaso, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Michael McInnis, was tried *in absentia* by a jury for the offense of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). He was found guilty and sentenced to a term of 5 to 8 years imprisonment.

Defendant appeals, and we affirm.

Defendant contends on appeal that (1) the trial court erred by conducting the trial in his absence; (2) his conviction for armed robbery should be reduced to robbery; (3) he was deprived of his right to a fair trial; and (4) the State improperly argued as to his absence from the courtroom during his trial.

On October 21, 1977, with defendant present, jury selection began. A panel of four jurors was selected, and the case was thereafter continued until the following Monday, October 24, at 9:30 a.m. Defendant stated he would be in court at 9:30 a.m. on that date.

On October 24, 1977, defendant failed to appear. Defense counsel stated she had called his home and was informed that he was not there. A bond forfeiture was ordered and an arrest warrant issued. The court stated its intention to continue the case and asked both sides to be prepared to argue on the issue of whether defendant could be tried *in absentia*.

On October 25, 1977, defendant failed to appear, and the State urged

the court to continue the case until the next day and then proceed to trial under section 115—4.1 (Ill. Rev. Stat. 1975, ch. 38, par. 115—4.1).

On October 26, 1977, the court heard arguments on the issue of whether to proceed with the trial *in absentia*. The public defender stated that defendant was retaining private counsel, and that the attorney had stated he would try to appear in court that day. The State contended the attorney indicated he was not involved in the case and he had not filed an appearance. The attorney did not appear.

The jury selection was completed on October 26, 1977, and the case was continued until the next day.

Diane Smith Roster testified that on August 28, 1975, she was visiting her sisters at 1615 West 65th Street, in Chicago. She and one of her sisters, Brenda Holland, went to a currency exchange on 63rd and Ashland. Roster cashed her aid check and purchased some food stamps. She put the stamps in her purse and the money in her bra. When she and her sister returned to the doorway at 1615 West 65th Street, they entered the first of a double set of doors. Then, two men entered; one held Holland against the door while the other held the gun to Roster's left temple. The witness stated the gunman told her to "Give it up * * *." She handed him her purse and both men ran.

Roster ran after the two men but she lost sight of them in the area of 6549 Marshfield. When she returned to the apartment, the police had arrived. She, two police officers, and her sister drove around the area in a police car. The officers stopped the car and went to a house. When the officers returned, they had some items the victim identified as having been in her purse. They also showed her a shirt, which she identified as the one worn by the man with the gun, and a gun, which appeared similar to the one used in the robbery.

Roster was taken to the police station where she viewed a lineup. She identified a man as the one who held her sister during the robbery. The following day, Roster was shown photographs from which she made an identification of the man who robbed her. On September 7, 1975, she viewed a second lineup at which she identified one of the men as being involved in the robbery.

Brenda Holland testified that she went to the currency exchange with her sister, Diane Smith Roster. While in the exchange, she saw one young man inside, who left before she did, and another young man outside. She stated she saw both men later that day. According to the witness, after walking back to her apartment and entering the building with her sister, two men entered behind them. One man pushed her against the door while the other put a gun to her sister's head. Her sister gave one of them her purse, and both men fled. Holland stated she went to her apartment

and called the police. When the officers arrived, they drove her and her sister around the area and stopped in the vicinity of Marshfield Avenue. The police left the car. When they returned, they showed her a gun, and she identified it as having been used in the robbery. She also identified a shirt as that worn by the gunman.

That same day, Holland picked a man from the lineup as the man who had restrained her during the incident. She later viewed some photographs and picked out one as that of the man who had been in the currency exchange at the same time as she and her sister.

Officer Pete Kemmer testified that he and his partner, James Eldridge, responded to a call from 1615 West 65th Street and spoke with Diane Smith Roster and Brenda Holland. While he, his partner, and the two women were driving around the area, he received a radio message. Thereafter, they drove to 6549 Marshfield Avenue. He and his partner left the patrol car, went up the stairs and knocked on the door but there was no response. While keeping the building under surveillance, he saw a man attempt to leave through a basement window. Officer Kemmer gained entry through the basement door, went to the storage area, and apprehended Everette Toliver.

According to Officer Kemmer, he later reentered the building and went to the first floor. He found an envelope, a welfare eligibility card bearing the victim's name, food coupons, a receipt, and a chrome-plated revolver. He also found a shirt on the couch which matched the description of the one worn by one of the offenders. He took the items to Roster and Holland. Roster identified the welfare card and coupons as being her property. She also identified the revolver as similar to the one used in the robbery, and the shirt as having been worn by one of the offenders. On cross-examination, Officer Kemmer stated that the recovered weapon was a gas gun.

Officer James Eldridge, Officer Kemmer's partner, was called to testify. His testimony was substantially the same as that of Officer Kemmer. He further stated that on August 29, 1975, he had attended a preliminary hearing for Everette Toliver. He was present when an arrest warrant was issued for Michael McInnis, the defendant. The court sustained a defense objection to that answer but denied a motion for a mistrial. Officer Eldridge testified that he arrested McInnis on September 7, 1975, and that McInnis gave the Marshfield address as his place of residence.

Investigator Griffin testified that he conducted a lineup on September 7, 1975, and Roster identified McInnis as one of the offenders. She also identified McInnis from a group of photographs shown her. After Officer Griffin's testimony, both sides rested.

The jury returned a verdict of guilty on the charge of armed robbery.

Defendant appeals his conviction.

Defendant contends on appeal that the trial court erred by conducting the trial in his absence and further asserts that this constituted a violation of his constitutional rights.

Defendant concedes that if *People v. Pace* (1975), 34 Ill. App. 3d 440, 339 N.E.2d 785, is followed, then the trial court acted within its discretion and could proceed with the trial. However, defendant asserts his trial had not yet commenced as it had in *Pace*.

■■ Both defendant and the State cite section 115—4.1 of the Code of Criminal Procedure of 1963 as being the applicable standard in determining whether the trial has begun. That section provides in pertinent part as follows:

> "In any criminal trial, where a defendant after his trial commences willfully absents himself from court for a period of 2 successive court days, the court shall proceed with the trial. The absence of such defendant shall not operate as a bar to concluding the trial, to a judgment of conviction resulting therefrom, or to a final disposition of the trial in favor of the defendant." (Ill. Rev. Stat. 1975, ch. 38, par. 115—4.1.)

A defendant in a criminal trial has a constitutional right to be present during all stages of the trial. (*People v. Mallett* (1964), 30 Ill. 2d 136, 141-42, 195 N.E.2d 687, 690.) A trial conducted in the absence of a defendant is not favored and a trial court should be very reluctant to permit a trial to proceed in defendant's absence. (*People v. Summers* (1973), 12 Ill. App. 3d 893, 897, 299 N.E.2d 462, 465.) However, a defendant may not prevent his trial by absenting himself voluntarily from the proceeding. *Pace*, at 444.

In the present case, defendant was present in court on October 21, 1977, when jury selection began. Four jurors were selected, and the case was continued until October 24, 1977. However, defendant failed to appear on that date and the following day. On October 26, 1977, the judge concluded the jury selection and began taking evidence. After hearing all of the evidence, the jury found defendant guilty of armed robbery, and he was sentenced.

Defendant relies on *People v. Davis* (1968), 39 Ill. 2d 325, 235 N.E.2d 634. However, as even defendant states, the conviction was reversed in that case where the defendant had not been present for the jury selection nor any other portion of the trial. In *Davis*, the court held that an entire trial conducted in defendant's absence without the representation of counsel was constitutionally impermissible.

■■ We do not have the same situation in the present case. Here, defendant was present during the initial stages of the trial, and he had been advised when to return to court but failed to appear. As stated in

another *People v. Davis* (1979), 69 Ill. App. 3d 548, 551, 388 N.E.2d 167, 169:

> "[W]here a defendant voluntarily absents himself after a trial has begun, and chooses not to be present for further proceedings, he has waived his right to appear and defend in person."

Defendant further contends the trial court erred when it imposed sentence upon him in his absence. The defendant asserts that such proceedings are not authorized by statute, and the court failed to obtain a presentence report. The State contends defendant waived any rights to be present at or connected with the sentencing hearing. We agree with the State's position.

Defendant voluntarily absented himself from the trial, thereby waiving his constitutional rights to be present at all stages of the trial. (See *People v. Pace* (1975), 34 Ill. App. 3d 440, 339 N.E.2d 785.) We do not find the trial court erred in conducting the defendant's trial in his absence or sentencing him without his being present.

Next, defendant contends his conviction for armed robbery must be reduced to robbery. The statute states:

> "A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon." Ill. Rev. Stat. 1975, ch. 38, par. 18—2.

Our supreme court defined a "dangerous weapon" in *People v. Dwyer* (1927), 324 Ill. 363, 364-65, 155 N.E. 316, 317. In that case, the court held a deadly weapon is an instrument that may or may not be used for protection or defense and is capable of producing death. The court went on to state that some weapons are deadly *pe se* and others, depending on the manner in which they are used, become deadly.

> "Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and the circumstances of the case." *Dwyer*, at 365.

In the present case, the officer testified that it was a gas gun that fired "disabiliting [*sic*]" gas. The gun was found to be unloaded shortly after the robbery. However, it is still possible that the gun was loaded and operable at the time of the robbery. The witness testified the defendant threatened her with a pistol held to her head.

In *People v. Greer* (1977), 53 Ill. App. 3d 675, 368 N.E.2d 996, the victim was approached from behind when someone grabbed his arm and said he wanted his money. The offender then put a gun to the victim's head. The defendant was apprehended shortly thereafter with a

.22-caliber gas-operated pellet pistol that was unloaded. The *Greer* court held that it was for the jury to decide whether the pellet gun was a dangerous weapon.

There was sufficient evidence in the case at bar to support the jury's determination that the gun was a dangerous weapon, thus supporting its armed robbery verdict.

■■ Further, defendant contends he was deprived of his right to a fair trial by the court's refusal to give the jury instruction on the lesser included offense of robbery.

> "A defendant is entitled, upon his request, to have the jury instructed as to an included offense if there is evidence in the record which, if believed by the jury, would reduce a crime to the included offense." *People v. Foster* (1975), 32 Ill. App. 3d 1009, 1011, 337 N.E.2d 90, 92.

In the instant case, it was shown that defendant held a .22-caliber gas pistol to the victim's head and took her property. The victim identified the gun found in the Marshfield apartment as similar to the one used in the robbery. There is no evidence in the record which would tend to indicate that an unarmed robbery occurred.

In *People v. Thompson* (1976), 35 Ill. App. 3d 773, 776, 342 N.E.2d 445, 448, the court stated that where evidence shows the assailant is either guilty of the higher offense or not guilty of any offense it is not necessary to give an instruction on the lesser offense. We find the evidence adduced at trial was sufficient to sustain the defendant's conviction for armed robbery.

■ Finally, defendant contends the State, in its final argument, commented on defendant's absence from the courtroom, thereby prejudicing the jury and denying him a fair trial. The prosecutor argued McInnis would be identified by the complaining witness "if he were here." The defense counsel's objection to the statement was sustained. The prosecutor made further comments on defendant's absence by stating that defendant had a responsibility to face the consequences of his actions, and he failed to do so. In his rebuttal argument, the prosecutor continued to make comments concerning defendant's failure to be present. The court admonished the jury that it should be concerned with whether or not the State had presented evidence that proved defendant guilty beyond a reasonable doubt. Defense counsel asked for a mistrial and was denied.

> "A conviction will not be disturbed on the basis of improper remarks made during closing argument unless it appears that the improper remarks constituted a material factor in the conviction." (*People v. Redmond* (1979), 73 Ill. App. 3d 160, 178, 390 N.E.2d 1364, 1376.)

Ill-advised statements in closing argument will not automatically warrant a reversal of a conviction, nor will improper remarks of counsel, unless they result in substantial prejudice to the defendant. *People v. Kelly* (1975), 25 Ill. App. 3d 753, 757, 324 N.E.2d 82, 85.

In the instant case, there was an eyewitness who identified the defendant from a group of photographs and later identified him in a lineup. In addition, a police officer testified that he found items, which the victim identified as her property, and the gun, which was used in the robbery, at 6549 Marshfield. The defendant gave the Marshfield address as his place of residence.

We do not believe the comments of which defendant complains were a material factor in the conviction of the defendant, in view of the totality of the evidence supporting the jury's finding of guilty.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P. J., and ROMITI, J., concur.