(No. 65391.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JESSIE PARTEE, JR., Appellee.

*Opinion filed October 20, 1988.*

Neil F. Hartigan, Attorney General, of Springfield, and Paul A. Logli, State's Attorney, of Rockford (Shawn W. Denney, Solicitor General, and Terence M. Madsen, Assistant Attorney General, of Chicago, and Kenneth R. Boyle and William L. Browers, of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Steven E. Wiltgen, Assistant Defender, of the Office of the State

Appellate Defender, of Elgin, for appellee.

JUSTICE CLARK delivered the opinion of the court:

The principal question raised by this appeal is whether a defendant who is convicted *in absentia* may appeal his conviction without first moving for a hearing to determine whether his absence from trial was willful. We answer this question in the affirmative.

The defendant, Jessie Partee, Jr., was indicted for aggravated battery in the circuit court of Winnebago County. He was present during the presentation of the State's case in chief. However, he failed to return to court after the State rested. After a short recess, the trial proceeded, and the defendant was convicted *in absentia*. The defendant was also sentenced *in absentia* to five years in prison. The defendant then appealed his conviction to the appellate court, raising as his sole issue on appeal the contention that he could not be lawfully tried *in absentia* because he had not been advised by the trial court that trial and sentencing could be conducted in his absence.

In the appellate court the State moved to dismiss the appeal on the grounds that the appellate court lacked jurisdiction. More precisely, the State argued that the defendant's failure to move for a hearing on the willfulness of his absence, as provided for in section 115—4.1(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1(e)), rendered his conviction and sentence *in absentia* not final and appealable. The appellate court, in a unanimous decision, rejected the State's argument, holding that the defendant is not required to file for a section 115—4.1(e) hearing before appealing a conviction *in absentia*. Turning to the merits of the defendant's appeal, the court found it could not determine whether the defendant had been properly admonished because of a conflict between the common law

record and the report of proceedings. The appellate court therefore remanded the cause for an evidentiary hearing under Rule 329 (107 Ill. 2d R. 329) to resolve the conflict. 153 Ill. App. 3d 841.

The issue presented here depends upon the interpretation of section 115—4.1(e) and of our rules. Section 115—4.1 allows the State to try *in absentia* defendants who willfully avoid appearing for trial. Under section 115—4.1(b), "the absence of the defendant from a trial conducted pursuant to this section does not operate as a bar to concluding the trial, to a judgment of conviction resulting therefrom, or to a final disposition of the trial in favor of the defendant." Moreover, section 115—4.1(c) goes on to provide that a convicted defendant shall be sentenced *in absentia*. Once sentenced, however, the defendant is not without remedy. Under section 115—4.1(e):

> "When a defendant who in his absence has been either convicted or sentenced or both convicted and sentenced appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. A hearing with notice to the State's Attorney on the defendant's request for a new trial or a new sentencing hearing must be held before any such request may be granted. At any such hearing both the defendant and the State may present evidence." Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1(e).

After such a hearing a defendant whose section 115—4.1(e) motion has been denied "may file a notice of appeal therefrom. Such notice may also include a request for review of the judgment and sentence not vacated by the trial court." Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1(g).

Our rules provide that an appeal to the appellate court in a criminal case must be perfected by the filing

of a notice of appeal. However, "[n]o step in the perfection of the appeal other than the filing of the notice of appeal is jurisdictional." (107 Ill. 2d R. 606(a).) Subject to certain exceptions, a notice of appeal must be filed within 30 days after the entry of "the final judgment appealed from." 107 Ill. 2d R. 606(b).

While the State leans more on policy considerations than on the language of the statute or rules, its position is not entirely devoid of statutory analysis. The State argues that the legislature intended the appeal provision contained in section 115—4.1(g) to supersede the absent defendant's right to appeal his conviction immediately after final judgment. The State argues, in other words, that section 115—4.1(g) strips the appellate court of jurisdiction over the appeal of a defendant tried *in absentia*, at least until the defendant attempts to make the showing of nonwillfulness contemplated in section 115—4.1(e). In another variation upon the same argument, the State contends that a judgment *in absentia* is not final and appealable until the defendant moves for a new trial under section 115—4.1(e). Thus, the defendant's notice of appeal would be premature under Rule 606(b), and the lack of a timely notice of appeal would deprive the appellate court of jurisdiction.

Neither argument, in our opinion, holds much water. Nothing in the language of section 115—4.1 explicitly deprives the appellate court of jurisdiction over an absent defendant's immediate appeal. Nor do the statements of various legislators quoted in the State's brief support such an interpretation. In fact, all of these statements merely argue that the statute's provision for appeal after a section 115—4.1 hearing was designed to assure constitutionality of the statute.

Moreover, acceptance of the State's interpretation of section 115—4.1(e) as a jurisdictional predicate would lead to absurd and unfortunate results. It is an elemen-

tary principle of statutory interpretation that no statute should be construed in a manner which will lead to consequences which are absurd, inconvenient, or unjust. (*McCastle v. Sheinkop* (1987), 121 Ill. 2d 188, 193; *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 312-13.) The injustice would be particularly evident in the case of a defendant who is willfully absent but whose trial is marred by other constitutional errors.

Section 115—4.1 provides for trial *in absentia*. It does not create a kangaroo court. The statute explicitly provides that "[a]ll procedural rights guaranteed by the United States Constitution, Constitution of the State of Illinois, statutes of the State of Illinois, and rules of court shall apply to the proceedings the same as if the defendant were present in court ***." (Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1(a).) Thus, the defendant who is absent from trial, even willfully, retains some of the procedural rights of a present defendant.

Under the State's interpretation, a defendant who is willfully absent but who believes that his trial was unfair for some reason unrelated to his absence would be placed in an intolerable dilemma. Under section 115—4.1(g) he may include in his notice of appeal "a request for review of the judgment and sentence not vacated by the trial court." As the State argues, this provision allows the defendant to raise issues unrelated to his absence. However, in order to file such a notice of appeal, the defendant must first move for a new trial under section 115—4.1(e) on the ground that "his failure to appear in court was both without his fault and due to circumstances beyond his control." Thus the defendant who wishes to raise issues unrelated to his absence would be forced, under the State's interpretation, to make a bad-faith claim of unwillful absence. His attorney could not make such a claim without running afoul of our disciplinary rules. See 107 Ill. 2d R. 7—102(a)(2) (knowingly ad-

vancing a claim or defense which is unwarranted under existing law); 107 Ill. 2d R. 7—102(a)(4) (knowingly using false testimony or perjured evidence); 107 Ill. 2d R. 7—102(a)(5) (knowingly making a false statement of law or fact).

Our conclusion is strengthened by the consideration of section 115—4.1(b), which provides that "the absence of the defendant from a trial conducted pursuant to this section does not operate as a bar to concluding the trial, to a judgment of conviction resulting therefrom, or to a final disposition of the trial in favor of the defendant." The language of this section strongly suggests that the legislature viewed a judgment *in absentia* not as a temporary disposition pending the defendant's capture or return, but as a final adjudication of his case. This interpretation is also supported by the provision for *in absentia* sentencing contained in section 115—4.1(c). The final judgment in a criminal case is the sentence. (*People v. Allen* (1978), 71 Ill. 2d 378, 381.) By providing for *in absentia* sentencing, the legislature strongly implied that it intended *in absentia* judgments to be final and appealable.

Even were we to believe that the legislature intended the opposite, however, we could not carry out its intent unless we were satisfied that depriving the appellate court of jurisdiction did not conflict with our rules of appellate procedure. We have held that attempts by the legislature to make nonfinal judgments appealable violate article VI, section 6, of our constitution (Ill. Const. 1970, art. VI, §6), which states that the supreme court may provide by rule for appeals to the appellate court from nonfinal judgments of the circuit court. (*In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 407.) Similar problems would arise from a statute which made final judgments nonappealable, in contravention of the constitutional provision that "[a]ppeals from final judg-

ments of a Circuit Court are a matter of right to the Appellate Court." (Ill. Const. 1970, art. VI, §6.) The "finality" of a judgment is ultimately a matter for judicial, and not legislative, decision.

Nothing in our rules suggests that a section 115—4.1 conviction and sentence is nonfinal, or that the appellate court lacks jurisdiction to hear an appeal from it. Indeed, the rules specifically provide that "no step in the perfection of the appeal other than the filing of the notice of appeal is jurisdictional." (107 Ill. 2d R. 606(a).) Where the rules contemplate that a step other than the notice of appeal is jurisdictional, they specifically so provide. (See, *e.g.*, 107 Ill. 2d R. 604(d) (providing that "[n]o appeal from a judgment entered on a plea of guilty shall be taken" unless the defendant first moves in the trial court to withdraw his plea); *People v. Wilk* (1988), 124 Ill. 2d 93 (holding that Rule 604(d) is jurisdictional).) While the State could argue that the lack of finality of this judgment rendered the notice of appeal premature under Rule 606(b), this conclusion would depend upon the circular argument that a section 115—4.1 judgment, unlike all other criminal judgments, is not final. For the reasons given above, we do not agree.

We note parenthetically that our decision is in accordance with that of every appellate panel which has interpreted section 115—4.1, with only one possible exception. (See *People v. Sayles* (1985), 130 Ill. App. 3d 882; *People v. Stark* (1984), 121 Ill. App. 3d 787; *People v. Muir* (1983), 113 Ill. App. 3d 1096.) As the court in *Sayles* reasoned:

> "In *People v. Stark* (1984), 121 Ill. App. 3d 787, 460 N.E.2d 47, the Appellate Court for the Fifth District held that a conviction and sentencing *in absentia* was an appealable judgment. The court stated that section 115—4.1 'merely provides defendant with an additional means of securing a new trial,' and was not meant to 'preempt' a

defendant's right to appeal an otherwise final judgment. (121 Ill. App. 3d 787, 790, 460 N.E.2d 47, 49.) The court stated that parallel proceedings may occur when a defendant directly appeals the merits of his conviction and also files a section 115—4.1 motion. The court noted that there is nothing in the statute stating that such a motion is a condition precedent to an appeal and, indeed, a defendant may never choose to file such a motion.

As a practical matter, the court in *Stark* also held that it was proper for defense counsel, in a defendant's absence, to file notice of appeal without consulting the defendant. 'Just as defendant's prior approval is not required before counsel validly exercises professional judgment in matters of trial tactics, so too is such prior approval unnecessary when counsel exercises professional judgment and files a notice of appeal.' 121 Ill. App. 3d 787, 789, 460 N.E.2d 47, 48.

In *People v. Muir* (1983), 113 Ill. App. 3d 1096, 448 N.E.2d 233, the Appellate Court for the Third District also held that section 115—4.1 did not render an otherwise final *in absentia* judgment nonappealable. The court noted that the State could cite no authority that would indicate that the statutory right to request a new trial or sentencing hearing by a defendant convicted or sentenced *in absentia* affects the finality of his judgment of conviction. The court stated that since the defendant had never requested relief under section 115—4.1, the fact that he had elected to pursue his right of appeal directly served to waive any rights he had under the statutory procedure.

We agree with the holdings in *Stark* and *Muir* that section 115—4.1 does not render an otherwise final conviction and sentence *in absentia* nonappealable. In our opinion a proceeding under section 115—4.1 after an appeal has been prosecuted *in absentia* is another species of post-conviction relief." (130 Ill. App. 3d at 887-88.)

The one possible exception is *People v. Brown* (1984), 121 Ill. App. 3d 776. In *Brown* the defendant was tried *in absentia* and then filed a notice of appeal. After filing the notice, he filed a section 115—4.1(e) motion challeng-

ing the willfulness of his absence. The circuit court dismissed the motion, holding that the defendant's filing of the notice of appeal had deprived the circuit court of jurisdiction. The appellate court reversed and remanded, holding that the initial notice of appeal had been premature because the defendant's *in absentia* conviction was not final and appealable. Because it had been premature, the circuit court retained jurisdiction of the defendant's case.

Unlike the appellate court below, we do not agree that the *"ratio decidendi"* of *Brown* can be reconciled with the decision which we and the appellate court have reached here. *Brown* is clearly premised upon the notion that a section 115—4.1(e) motion is a prerequisite to the appeal of a judgment *in absentia*.

The first difficulty, which is really conceptual, rests upon the premise that a section 115—4.1(e) motion to vacate a judgment and the underlying judgment *in absentia* are part of the same "case." If so, then it would be truly difficult to divide jurisdiction between the circuit and appellate courts. However, defendant argues, and we agree, that a section 115—4.1(e) motion is actually more akin to a collateral attack upon a final judgment than it is to a procedural step in the direct appeal of that judgment. In other words, a section 115—4.1(e) motion is analogous to an action for post-judgment relief under section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) or an action for post-conviction relief under section 122—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*). Since a collateral attack upon a judgment is a case separate and apart from the case in which the judgment has been attacked, it has been held that the availability or pendency of a direct appeal will not affect the ripeness of a claim for post-conviction or post-judgment relief (see *People v. Edsall* (1981), 94 Ill. App. 3d

469; *People v. Alfano* (1981), 95 Ill. App. 3d 1026); conversely, the pendency or availability of the collateral remedy will not affect the jurisdiction of the appellate court over a direct appeal (*People v. Boer* (1914), 262 Ill. 152; *Johnson v. Thomas* (1966), 75 Ill. App. 2d 407). Thus, the jurisdiction of the appellate court over the direct appeal does not affect the circuit court's jurisdiction over a defendant's section 115—4.1(e) motion, and the jurisdiction of the circuit court over the section 115—4.1(e) motion does not deprive the appellate court of jurisdiction over the defendant's initial appeal. Since the defendant here, unlike the defendant in *Brown,* has not filed a section 115—4.1(e) motion, we need not reach the question of whether *Brown* should be overruled. However, to the extent that the reasoning of *Brown* conflicts with our reasoning here, it is disavowed.

This brings us to the practical difficulties which the State believes will flow from multiple appeals of a section 115—4.1(e) conviction. The State argues that this interpretation will give an absent defendant two opportunities for a direct appeal instead of the usual one. It will also, the State believes, encourage a hypothetical absent defendant to "sit on a South American beach while his counsel tests his conviction before he decides to resubmit himself to the jurisdiction."

This defendant, as it happens, is not basking on a South American beach but is instead confined in a Rock County, Wisconsin, jail. But regardless of the applicability of the State's point to the factual situation presented here, we do not think that it is well-taken.

First, the State's concern about two "appeals" rests on the assumption that the appellate court will fail to apply such doctrines as collateral estoppel, *res judicata,* waiver, or the law of the case. (See, *e.g., People v. McNair* (1985), 138 Ill. App. 3d 920; *People v. Young* (1987), 152 Ill. App. 3d 361.) While we need not reach

the question of whether, and to what extent, these doctrines apply, they are available to preclude a defendant from taking two bites out of the same appellate apple. A defendant who elects to raise errors unrelated to his absence during his initial appeal may well be bound by the appellate court's unfavorable determination of them.

Second, the State's concern that a defendant will remain a fugitive pending his appeal in order to test the validity of his conviction rests on several faulty premises and a misapprehension of the appellate court's holding. Initially we note that the State's proposed rule is not limited to "fugitives": defendants who surrender or are apprehended after sentence would also be precluded from bringing a direct appeal without first filing a section 115—4.1(e) motion. Conversely, defendants who flee *after* sentence and conviction would not be subject to the provisions of section 115—4.1(g). It is therefore difficult to understand how depriving the appellate court of jurisdiction over an absent defendant's appeal would encourage fugitive defendants to return.

The State also fails to understand that the appellate court only held, as do we, that it did not lack jurisdiction over the defendant's appeal. We do not hold that the appellate court *must* hear a fugitive's appeal in all instances. We adhere to the century-old rule that an appellate court has the discretionary power to refuse to hear a fugitive's appeal unless and until the fugitive returns to the jurisdiction. (*People v. Estep* (1952), 413 Ill. 437; *McGowan v. People* (1882), 104 Ill. 100.) By retaining this discretionary power, the appellate court is in a better position to induce the fugitive appellant to return than if it lacks jurisdiction altogether.

The appellate court in this case appears to have exercised its discretionary power by granting the defendant leave to file an affidavit expressing his interest in and desire to prosecute the appeal. This was a reasonable

precaution in the case of a defendant who was beyond the jurisdiction of the court, and who later might have claimed that the appeal had been prosecuted without his consent. Moreover, the fact that the defendant was in the custody of another jurisdiction militated in favor of hearing his appeal without making it conditional upon his return.

For the foregoing reasons, we hold that the appellate court had jurisdiction of this appeal, and the State's motion to dismiss was properly denied.

We turn to the merits of the defendant's appeal. In the appellate court the State raised three arguments in response to the defendant's claim that he had not been admonished of the possibility that he could be tried and sentenced *in absentia*: (1) that the defendant waived any right to admonishment when his counsel, with the defendant's apparent consent, waived the admonishment, (2) that such admonishments were actually made, as reflected by a docket entry in the common law record, and (3) that the failure to admonish a defendant is not reversible error in the case of a defendant who flees during, rather than before, trial. As the State correctly notes, the appellate court partially accepted the second argument and remanded for a hearing to resolve the discrepancy between the common law record and the report of the proceedings. The State raises no objection to this procedure. The State does not re-raise the first argument, and has apparently abandoned it. We therefore express no opinion as to its merit. We are left, therefore, only with the consideration of the State's final argument, and with certain arguments of the defendant.

The requirement that the defendant be admonished as to the consequences of his absence is contained in section 113—4(e) of the Code. It states:

"If a defendant pleads not guilty, the court shall advise him at that time or at any later court date on which

he is present that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence." Ill. Rev. Stat. 1985, ch. 38, par. 113—4(e).

The State acknowledges the importance of the admonishment. The State argues, however, that it was not required here.

First, citing *People v. Steenbergen* (1964), 31 Ill. 2d 615, *People v. McInnis* (1980), 85 Ill. App. 3d 109, and *People v. Pace* (1975), 34 Ill. App. 3d 440, the State argues that a defendant who flees during trial waives his right to be present. As a corollary, the State argues that such a defendant need not be informed of his right to be present.

The State's argument confuses statutory interpretation with constitutional law. As a matter of constitutional law, it is clear that a defendant who flees during trial may be tried and sentenced in his absence, even if he is not specifically informed that this is a possible consequence of his flight. (*Taylor v. United States* (1973), 414 U.S. 17, 38 L. Ed. 2d 174, 94 S. Ct. 194; *People v. Steenbergen* (1964), 31 Ill. 2d 615, 618-19; *People v. McInnis* (1980), 85 Ill. App. 3d 109, 113-14; *People v. Pace* (1975), 34 Ill. App. 3d 440, 444-45.) Subsequent to our decision in *Steenbergen*, we decided in *People v. Davis* (1968), 39 Ill. 2d 325, that a defendant who absented himself after arraignment but before a jury had been impaneled could not be constitutionally tried *in absentia* if he was not represented by counsel and had not been informed when the trial would begin.

This is the genesis of the State's distinction between defendants who flee before trial and defendants who flee during trial. Whatever its merit as a matter of constitutional law, it is not reflected in the language of either

section 113—4(e) or section 115—4.1. Section 115—4.1 applies to defendants who flee any time after "arrest and an initial court appearance," not merely during trial. Section 113—4(e) applies to any defendant who pleads not guilty. The State's argument that these statutes reflected the prestatutory constitutional case law is supported only by vague remarks in the testimony of a witness before a legislative committee, and not by any language in the statutes themselves.

In fact, usual principles of statutory interpretation would suggest that the admonishment contained in section 113—4(e) is required—even in the case of a defendant who flees during trial. The use of the word "shall" in the statute suggests, although it does not compel, the conclusion that the section 113—4(e) admonishment is mandatory, and not directory only. (See *People v. Porter* (1988), 122 Ill. 2d 64, 85; *People v. Youngbey* (1980), 82 Ill. 2d 556, 562.) The appellate court has so held in cases involving defendants who fled before trial. (*People v. Watson* (1982), 109 Ill. App. 3d 880; *People v. Carroll* (1982), 109 Ill. App. 3d 1041.) Moreover, the legislative history of sections 113—4(e) and 115—4.1 suggests that the 113—4(e) admonishment was part of a complex series of tradeoffs designed to balance the defendant's right to be present at trial, the State's interest in the expeditious administration of justice, and our traditional distrust of trials *in absentia*. (See *People v. Evans* (1961), 21 Ill. 2d 403, 405-06 ("For generations our law has shown an anxious concern lest any semblance of trial *in absentia* be sanctioned"); accord *People v. Davis* (1968), 39 Ill. 2d 325, 330-31.) Prior to 1979, section 115—4.1 only applied to defendants who willfully absented themselves during trial. It was broadened by Public Act 81—1066 (Pub. Act 81—1066 §1, eff. Sept. 26, 1979) to apply to defendants who absented themselves after the commencement of official proceedings. As part

of the same bill, subsection (e) was added to section 113—4. The section 113—4(e) admonishment is obviously a prophylactic measure which is designed both to dissuade defendants from absconding at any time, before or after trial, and to provide for a formal waiver of their right to be present. The distinction between pretrial and midtrial flight, while perhaps constitutionally important, is not reflected in the statutory scheme.

We therefore reject the State's argument that a section 113—4(e) admonishment is not required in the case of a defendant who absconds during trial. We also reject the defendant's contention that a remand is unnecessary because the record does not affirmatively reflect the admonition. Rule 329 was designed to correct inaccuracies in the record in just such instances as this.

The State also asks that we issue an order precluding the defendant from filing a section 115—4.1(e) motion for a new trial on the ground that his absence was not willful. While we express no opinion as to whether such an order would ever be appropriate, we believe that in this case it would be premature. If the appellate court should reverse after the remand, the defendant will have no need to file a section 115—4.1(e) motion. The State may raise any objections it might have to such a motion at the time it is actually filed.

For the foregoing reasons, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court of Winnebago County for a Rule 329 hearing in accordance with this opinion.

*Affirmed; cause remanded.*