2024 IL App (1st) 230626-U

FIRST DISTRICT,
FIRST DIVISION
February 20, 2024

No. 1-23-0626

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| HEATHER WILLIAMS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 19 L 1957 |
| | ) | |
| ROBERT KELLY, | ) | Honorable |
| | ) | James Flannery, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held:* (1) Because the filing of a section 2-1401 petition is a new proceeding, trial court had jurisdiction to hear successive section 2-1401 petition while defendant's prior section 2-1401 petition was still before the appellate court. (2) Successive section 2-1401 petitions are not jurisdictionally barred. (3) Plaintiff forfeited *res judicata* argument raised for the first time in her reply brief. (4) Default judgment entered against unrepresented individual who was never served with notice of his attorneys' withdrawal or notice of the entry of default against him was void.

¶ 2    Plaintiff Heather Williams filed an action against defendant Robert Kelly alleging sexual abuse pursuant to the Childhood Sexual Abuse Act (Act) (735 ILCS 5/13-202.2 (West 2018)).

The court entered a default judgment against Kelly in the amount of $4,000,000. Kelly filed a petition to vacate the judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)), which the trial court denied, and which decision we affirmed in *Kelly v. Williams*, 2022 IL App (1st) 210833-U (*Williams I*).

¶ 3     While *Williams I* was pending in this court, Kelly filed another section 2-1401 petition in the trial court, styled as a "Petition to Vacate *Void* Default Judgment Order Pursuant To 735 ILCS 5/2-1401(f)." (Emphasis in original.) The trial court granted Kelly's petition, and Williams appeals, contending that (1) the trial court lacked jurisdiction to hear the petition and (2) the petition lacks merit. For the reasons that follow, we affirm.

¶ 4                                    BACKGROUND

¶ 5                                 Original Proceedings

¶ 6     In a complaint filed on February 21, 2019, Williams alleged that Kelly, a recording artist professionally known as "R. Kelly," had a sexual relationship with her from 1998, when she was 16 years old, until she reached the age of majority. Williams sought damages for "psychological distress" and "fragile emotional and mental state" caused by Kelly's alleged conduct.

¶ 7     Kelly appeared through counsel and filed an answer on November 12, 2019, in which he invoked his fifth amendment right against self-incrimination "as there is pending criminal charges in relation to the allegation[s]." Williams moved for summary judgment on the issue of liability, arguing that no genuine issues of material fact remained in light of "[p]laintiff's uncontroverted testimony together with [d]efendant's silence."

¶ 8     On January 22, 2020, while Williams' summary judgment motion was pending, Kelly's counsel (Abdallah Law) filed a motion to withdraw. At the time, Kelly was incarcerated at the

Metropolitan Correctional Center (MCC). The certificate of service for the motion to withdraw reflects that a copy was hand-delivered to Kelly at the MCC on "January 23rd, 2019" [*sic*].

¶ 9       On January 28, 2020, the trial court entered an "Order for Withdrawal of Counsel Without Substitution" in which it granted counsel's motion to withdraw and gave Kelly until February 25, 2020 to file a supplemental appearance or retain counsel to file an appearance on his behalf. On its face, the order does not state that Kelly will be defaulted for failure to file an appearance by February 25, 2020. Moreover, the record does not reflect that Kelly was served with the withdrawal order. One of Kelly's attorneys subsequently filed an affidavit stating: "[N]either I nor anyone at Abdallah Law delivered to [Kelly] a copy of the January 28, 2020 order allowing the firm's withdrawal."

¶ 10       On February 25, 2020, the court entered an "Order of Default and Setting Date for Prove-Up" in which it *sua sponte* entered default against Kelly "for failure to appear, answer, or otherwise plead," granted Williams' motion for summary judgment on liability, set a prove-up hearing on damages for March 10, 2020, and ordered Williams to "give notice of the entry of this Order of Default and date for prove-up to all parties, ***including all parties against whom default has been entered.***" (Emphasis in original.) Notwithstanding the court's order, the record does not reflect that Kelly was given notice of the default and prove-up date.

¶ 11       On March 10, 2020, the trial court held a hearing on damages at which Kelly was not represented and entered judgment against him in the amount of $4,000,000. After the hearing concluded, Kelly's new counsel, Brian Nix, appeared in the courtroom, and the court entered an order stating:

> "This cause coming on the prove up, with Attorney Brian Nix appearing after the entry of court order, *** it is hereby ordered:

> (1) Attorney Brian Nix shall file his appearance today March 10, 2020,
>
> (2) [Kelly is] given leave to file motion to vacate.
>
> (3) Motion to vacate shall be heard on April 9, 2020 ***."

¶ 12    Nix filed an appearance that same day, but took no further action until September 21, 2020, when he filed Kelly's first section 2-1401 petition for relief from judgment. The petition was never spindled, never heard by the court, and was apparently abandoned.

¶ 13                        Kelly's Section 2-1401 Petition

¶ 14    On February 10, 2021, Kelly, through new counsel (Jordan & Zito), filed a section 2-1401 petition to vacate the judgment. (Although this was technically the second petition filed, the prior petition was never adjudicated, so we shall refer to the February 10, 2021 petition as Kelly's "first" petition.) Kelly argued that he had a meritorious statute of limitations defense and had acted with due diligence because the MCC "restricted communications between inmates and attorneys because of the COVID-19 pandemic." The petition did not seek to vacate the default judgment order on grounds that it was void for lack of jurisdiction.

¶ 15    The trial court denied Kelly's petition on June 16, 2021. We affirmed on September 30, 2022, finding that Kelly's statute of limitations defense had been "fully adjudicated and rejected in the underlying action" and that Kelly failed to show due diligence where he had notice of his counsel's motion to withdraw and was able to contact his attorneys via phone calls. *Williams I*, 2022 IL App (1st) 210833-U, ¶¶ 25, 29-30.

¶ 16    Kelly filed a petition for rehearing (PFR) in which he argued that the default judgment was void because he "*did* Answer Plaintiff's Complaint." (Emphasis in original.) On November 14, 2022, we denied rehearing but modified our decision to hold that a trial court has

-4-

jurisdictional authority to default a defendant for failure to file a supplemental appearance after withdrawal of counsel. *Williams I*, 2022 IL App (1st) 210833-U, ¶¶ 26-28.

¶ 17　　Kelly's petition for leave to appeal (PLA) was denied on March 29, 2023, and the mandate issued from this court on May 4, 2023.

¶ 18　　　　　　　　　　　　The Instant Section 2-1401 Petition

¶ 19　　On January 9, 2023, while Kelly's PLA was still pending before our supreme court and the mandate from this court had not yet issued, Kelly, through new counsel (Bonjean Law Group), filed the instant "Petition to Vacate *Void* Default Judgment Order Pursuant To 735 ILCS 5/2-1401(f)" (emphasis in original) in the trial court. In that petition, he reiterated his argument that the trial court could not default him where he had answered the complaint. He also argued, for the first time, that the default judgment was void because he received no notice of his attorneys' withdrawal, the entry of default against him, and the prove-up hearing.

¶ 20　　In an attached affidavit, Kelly stated that the court's January 28, 2020 "Order for Withdrawal of Counsel Without Substitution" "was never sent to [him] at the MCC by mail or handed to [him] in person." Moreover, Kelly "was never told by ANYONE that [he] had to hire an attorney by February 25, 2020 or have a default judgment entered against [him]." Kelly further stated that the court's February 25, 2020 "Order of Default and Setting Date for Prove-Up" was "not sent to [him] by the Court or any attorney."

¶ 21　　Following a hearing on April 4, 2023, the trial court entered an order granting Kelly's petition, stating: "The Court finds that there is no evidence in the record that Defendant received notice. The Judgment is VOID and the petition is granted."

¶ 22　　　　　　　　　　　　　　　ANALYSIS

¶ 23        Section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)) authorizes a party to seek relief from a final judgment, such as a default judgment, more than 30 days after the entry of judgment. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101 (2002). The trial court's ruling on such a petition is considered a "final order" and is immediately appealable under Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016). *Sarkissian*, 201 Ill. 2d at 101; see also *S.C. Vaughan Oil Co. v. Caidwell, Troutt & Alexander*, 181 Ill. 2d 489, 496-97 (1998).

¶ 24        Generally, section 2-1401 petitions must be filed within two years of the judgment, and the petitioner must allege the existence of a meritorious defense and due diligence in bringing the petition. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). However, " '[a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally.' " *Sarkissian*, 201 Ill. 2d at 103 (quoting *Barnard v. Michael*, 392 Ill. 130, 135 (1945)). Thus, petitions brought on voidness grounds do not need to be brought within the two-year limit, and the petitioner does not need to allege a meritorious defense and due diligence. *Id.* at 104. A section 2-1401 petition seeking to vacate a void judgment presents "a purely legal issue" which we review *de novo*. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 46-47.

¶ 25        Williams argues that the trial court's April 4, 2023 order granting Kelly's petition to vacate the judgment must be reversed because (1) the trial court lacked jurisdiction to rule on Kelly's petition while the mandate had not yet issued from this court in *Williams I*; (2) successive section 2-1401 petitions are not permitted under Illinois law; (3) the trial court's order

"clearly contradicts this reviewing court's modified order" in *Williams I*; and (4) Kelly had actual notice of the prove-up, as evidenced by his counsel's appearance in court on that day.

¶ 26                     Trial Court's Jurisdiction over the Instant Petition

¶ 27          Kelly filed the instant section 2-1401 petition in the trial court on January 9, 2023, and the trial court granted the petition on April 4, 2023, before the mandate in *Williams I* issued from this court on May 4, 2023. Williams argues that the trial court lacked jurisdiction over the action until the mandate in *Williams I* was issued, since "once a notice of appeal is filed with a reviewing court, the lower court loses jurisdiction over that particular case" (*Wheatley v. International Harvester Co.*, 166 Ill. App. 3d 775, 777 (1988)) and jurisdiction is not reinvested in the trial court until the mandate is filed from the appellate court (*Hickey v. Riera*, 332 Ill. App. 3d 532, 543 (2001)).

¶ 28          However, a section 2-1401 petition is "a collateral attack upon a final judgment" rather than "a procedural step in the direct appeal of that judgment." *People v. Partee*, 125 Ill. 2d 24, 35-36 (1988). Accordingly, "[t]he filing of a section 2-1401 petition is considered a new proceeding, not a continuation of the old one." *Sarkissian*, 201 Ill. 2d at 102 (citing 735 ILCS 5/2-1401(b) (West 2000)); see also *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 23. "[O]ur supreme court has held that the pendency of a direct appeal does not affect the trial court's jurisdiction to entertain collateral attacks, including petitions under *** section 2-1401." *People v. Walker*, 395 Ill. App. 3d 860, 867 (2009) (citing *People v. Partee*, 125 Ill. 2d 24, 35-36 (1988)). In *Partee*, the court considered a motion to vacate a judgment *in absentia* under section 115-4.1(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, ¶ 115-4.1(e)), which "is analogous to an action for post-judgment relief under section 2-1401." *Partee*, 125 Ill. 2d at 35. The court stated:

"Since a collateral attack upon a judgment is a case separate and apart from the case in which the judgment has been attacked, it has been held that the availability or pendency of a direct appeal will not affect the ripeness of a claim for post-conviction or post-judgment relief [citations]; conversely, the pendency or availability of the collateral remedy will not affect the jurisdiction of the appellate court over a direct appeal [citations]. Thus, the jurisdiction of the appellate court over the direct appeal does not affect the circuit court's jurisdiction over a defendant's section 115-4.1(e) motion, and the jurisdiction of the circuit court over the section 115-4.1(e) motion does not deprive the appellate court of jurisdiction over the defendant's initial appeal." *Id.* at 35-36.

¶ 29　　　　Following the reasoning of *Partee*, this court has held that "because a petition under the [Post-Conviction Hearing] Act and a section 2-1401 petition are actions separate from one another, the pendency of an appeal in the one does not affect the court's ability to consider the other." *Walker*, 395 Ill. App. 3d at 867. Likewise, since Kelly's section 2-1401 petitions were separate actions, Kelly's appeal of the denial of his first petition did not affect the trial court's ability to consider the other.

¶ 30　　　　Williams cites *NCD, Inc. v. Kemel*, 308 Ill. App. 3d 814, 817 (1999), for the proposition that "[a] trial court may not rule on a [section 2-1401] petition that is filed before the appellate court issues its mandate revesting the trial court with jurisdiction." *NCD* does not acknowledge the well-established principle that "[t]he filing of a section 2-1401 petition is considered a new proceeding, not a continuation of the old one" (*Sarkissian*, 201 Ill. 2d at 102), and the only authority it cites on this issue is *Coldwell Banker Havens, Inc. v. Renfro*, 288 Ill. App. 3d 442, 446 (1997), which does not concern a section 2-1401 petition. Moreover, *NCD* cannot be reconciled with our supreme court's decision in *Partee*.

¶ 31                                    Successive 2-1401 Petitions

¶ 32        Relying on *Village of Glenview v. Buschelman*, 296 Ill. App. 3d 35, 39-40 (1998), Williams argues that the trial court lacked jurisdiction to hear Kelly's successive section 2-1401 petition. Although this issue is raised for the first time in Williams' reply brief and is therefore forfeited (Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing")), we choose to address it to clarify the law in this regard. *People ex rel. Dep't of Human Rights v. Oakridge Healthcare Center, LLC*, 2020 IL 124753, ¶ 36 (forfeiture may be overlooked "in the interests of *** maintaining a sound and uniform body of precedent" (internal quotation marks omitted)).

¶ 33        In *Walker*, 395 Ill. App. 3d at 867-68, we concluded that "*Buschelman* was wrongly decided," since "we find no case among the cases cited by the *Buschelman* court that addresses the question of multiple section 2-1401 petitions" and, moreover, "we find nothing in Illinois law that suggests that a party is limited jurisdictionally to one section 2-1401 petition." We therefore "reject[ed] the idea that a trial court lacks jurisdiction to hear more than one section 2-1401 petition." *Id.* at 870; see also *People v. Donley*, 2015 IL App (4th) 130223, ¶ 40 (acknowledging that a party is not jurisdictionally limited to a single section 2-1401 petition). Following our well-reasoned decision in *Walker*, we find that the trial court was not jurisdictionally barred from considering Kelly's section 2-1401 petition due to its successive nature.

¶ 34                                         *Res Judicata*

¶ 35        For the first time in her reply brief, Williams argues that the trial court's order "must be reversed because it clearly contradicts this reviewing court's modified order" in *Williams I*. She additionally argues that the doctrine of *res judicata* precludes Kelly from litigating issues he raised or could have raised in his first section 2-1401 petition. See *Stolfo v. KinderCare Learning*

*Centers, Inc.*, 2016 IL App (1st) 142396, ¶ 26; *State Farm Illinois Federal Credit Union v. Hayes*, 92 Ill. App. 3d 1127, 1129 (1981).

¶ 36    As discussed, "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020). We note the irony of Williams arguing *for the first time in her reply brief* that we should not consider Kelly's contentions of error because he failed to raise them at the earliest possible opportunity. In consequence, we do not consider Williams' forfeited *res judicata* argument.

¶ 37    However, we wish to clarify that there is no conflict between our modified order in *Williams I* and the trial court order that is the subject of this appeal. In *Williams I*, Kelly argued in his PFR that the default judgment against him was void where he had answered the complaint—an argument that we rejected. *Williams I*, 2022 IL App (1st) 210833-U, ¶¶ 26-28. In the instant section 2-1401 petition, Kelly reiterated the foregoing argument, but also raised a new argument not previously heard by this court, namely, that the default judgment was void because he did not receive proper notice of his counsel's withdrawal and the entry of default against him. The trial court granted Kelly's petition on grounds that "there is no evidence in the record that Defendant received notice," which does not contradict our ruling in *Williams I*.

¶ 38                                        Notice

¶ 39    Williams additionally argues that the trial court erred in finding that the judgment against Kelly was void based on "lack of service/notice to an unrepresented defendant."

¶ 40    In *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 84 (1988), the Supreme Court stated that "a judgment entered without notice or service is constitutionally infirm." The Court explained:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections. [Citation.] Failure to give notice violates the most rudimentary demands of due process of law." (Internal quotation marks omitted.) *Id.*

The *Peralta* defendant was defaulted without ever being properly served. Since defendant was "deprived of property in a manner contrary to the most basic tenets of due process," the Court held that "[t]he Due Process Clause demands" that the default judgment be vacated. *Id.* at 86-87.

¶ 41 Similarly, this court has stated that "[w]here service of process is not carried out in accordance with the manner provided by law it is invalid, no jurisdiction over the person of the defendant is acquired, and a default judgment rendered against the defendant is void." (Internal quotation marks omitted.) *City of Chicago v. Yellen*, 325 Ill. App. 3d 311, 315 (2001) (in an action for demolition, default judgment entered against building owner who was not served with the complaint and had never appeared was void for lack of personal jurisdiction).

¶ 42 Here, the record reflects that Kelly, who was incarcerated, was not served with the court's January 28, 2020 "Order for Withdrawal of Counsel Without Substitution," in violation of Supreme Court Rule 13(c)(4) (eff. July 1, 2017) (if a party does not appear when his counsel's motion for withdrawal is entered, his counsel is required to serve the order upon him within three days). Thus, Kelly was not apprised of the trial court's deadline for filing a substitute appearance. Additionally, Kelly was not served with the court's February 25 order entering default against him and setting a prove-up date of March 10. Under these circumstances, Kelly did not receive "notice reasonably calculated *** [to] afford [him] the opportunity to present [his] objections" (*Peralta*, 485 U.S. at 84) to the default judgment.

¶ 43    In *Safety-Kleen Corp. v. Canadian Universal Insurance Co.*, 258 Ill. App. 3d 298, 304 (1994), we reversed the trial court's denial of defendant's section 2-1401 petition where the defendant was not properly notified of counsel's withdrawal prior to the entry of default judgment. We explained that "[u]nder these circumstances, *** the entry of a default judgment was unjust." *Id.*; *cf. Fessler v. Weiss*, 348 Ill. App. 21, 29 (1952) (motion for new trial was properly granted where defendant had no notice of counsel's withdrawal and had not been notified of the trial, because allowing such a verdict to stand "would be unjust"). Likewise, we find that the instant default judgment, which was entered without proper service or notice to an incarcerated and unrepresented defendant, was unjust and cannot stand.

¶ 44    Williams argues that Kelly's counsel Nix had actual notice of the March 10 prove-up hearing, as evidenced by his appearance in court on that day. Nix's appearance *after* the conclusion of the prove-up (and 13 days after the entry of default against his client) does not demonstrate that he had sufficient notice to adequately defend his client's interests. More importantly, our supreme court has emphasized that actual notice, by itself, is insufficient to substitute for service of process. *Sarkissian*, 201 Ill. 2d at 116 ("our finding of proper service here is not premised on the mere fact that the Board had actual knowledge of the suit").

¶ 45    Williams further argues that Nix, as Kelly's counsel, had authority to accept service on Kelly's behalf. See Ill. S. Ct. Rule 11 (eff. July 1, 2017) ("If a party is represented by an attorney of record, service shall be made upon the attorney. Otherwise service shall be made upon the party."); *Doe v. Logan*, 2021 IL App (1st) 191447-U, ¶ 40 ("[W]here the evidence establishes that an individual expressed that service should be made upon his agent, it would be unjust to allow that individual, at his whim, to treat service made as directed by him as improper service"). However, Nix did not become Kelly's attorney of record until after entry of the default

judgment, and there is no evidence that Kelly "expressed that service should be made upon" Nix (*Doe*, 2021 IL App (1st) 191447-U, ¶ 40). Moreover, the record does not reflect that the January 28 withdrawal order or the February 25 order of default were served on Nix or any other party on Kelly's behalf.

¶ 46 Williams additionally asserts that Nix failed to act with due diligence after his March 10 appearance and that if he had "filed a motion to vacate within 30 days, the judgment against Kelly most certainly would have been vacated." While we do not condone Nix's actions in this regard, as discussed, a petitioner seeking relief from a void judgment under section 2-1401 does not need to demonstrate due diligence. *Sarkissian*, 201 Ill. 2d at 103.

¶ 47 As a final note, Williams argues that affirming the trial court's order would be "manifestly unfair" to her. The record reflects that she obtained a $4,000,000 default judgment against an incarcerated individual who was not served with notice of his attorneys' withdrawal. Although we express no opinion on the ultimate merits of Williams' cause of action, we do not find it manifestly unfair under the circumstances for those merits to be tested in court instead of Williams obtaining a multi-million-dollar judgment by default.

¶ 48                                    CONCLUSION

¶ 49 For the foregoing reasons, we affirm the trial court's April 4, 2023 order granting Kelly's petition for relief from judgment.

¶ 50 Affirmed.